Joseph A. Hinkhouse
Richard A. Hodyl
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson
Suite 3400
Chicago, IL  60601
Tel:  (312) 784-5400
jhinkhouse@hww-law.com
rhodyl@hww-law.com

Michael S. Davis
Robert Guttmann
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
40th Floor
New York, NY  10036
Tel: (212) 223-0400
mdavis@zeklaw.com
rguttmann@zeklaw.com

*Attorneys for Defendant American Home Assurance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————————— x | | |
| **In re: LEHMAN BROTHERS HOLDINGS, INC. et al.** | : | **Chapter 11** |
| | : | |
| **Debtors.** | : | **Case No. 08-13555** |
| ———————————————————— x | : | |
| **ALLIED WORLD ASSURANCE COMPANY (U.S.)** | : | |
| **INC.,** | : | **Ad. Pro. No. 15-01128-scc** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LB ROSE RANCH, LLC; VAUGHAN COUNTS;** | : | |
| **THISHA MCBRIDE; CHARLIE LAWSON;** | : | |
| **SARAHLIZ LAWSON; STEPHANIE MOSHER;** | : | |
| **STEVE MEW; KORI NEW; CRAIG WILLIS;** | : | |
| **PAMELA WILLIS; THE KOREICH 1981 TRUST;** | : | |
| **JAMES VIDAKOVICH REVOCABLE TRUST;** | : | |
| **GARY GRAY; MICHAEL CRYAN; BRIAN** | : | |

| | |
|---|---|
| ALONGE; ANDRE PONTIN; JULIE PONTIN;<br>PATRICK M. NESBITT; DAVID ICE; LISA ICE;<br>RICHARD MOORE; DANIEL HOCK; TONI<br>HOCK; J. CHRISTINE AMINI; NEIL ROSS; THE<br>SOHRAB AMINI TRUST; JOSEPH S. DAVIS;<br>KIRSTIN F. DAVIS; TINA ROCHOWIAK;<br>CHADWICK MICKSCH; SARAH MICKSCHL;<br>AMERICAN HOME ASSURANCE COMPANY;<br>And NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PUTTSBURGH, PA | :     **AMERICAN HOME**<br>:  **ASSURANCE COMPANY'S**<br>:     **ANSWER TO FIRST**<br>:  **AMENDED COMPLAINT,**<br>:  **AFFIRMATIVE DEFENSES**<br>:     **AND CROSS-CLAIM**<br>:<br>:<br>:<br>: |
|      **Defendants.** | : |

———————————————————————— x

NOW COMES Defendant, AMERICAN HOME ASSURANCE COMPANY, ("American Home"), by its attorneys, ZEICHNER ELLMAN & KRAUSE LLP and HINKHOUSE WILLIAMS WALSH LLP, and for its Answer to the First Amended Complaint filed by Plaintiff, ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. ("AWAC"), states as follows:

## NATURE OF ACTION

1.      AWAC is a putative insurer of Lehman Brothers Holdings Inc. ("LBHI") and LBHI's subsidiary, LB Rose Ranch LLC ("Rose Ranch"), Debtors in the above-captioned bankruptcy case, under certain umbrella liability insurance policies issued to LBHI. AWAC seeks a judicial declaration of the rights and other legal relations of AWAC, Rose Ranch, Rose Ranch's other putative insurers and the underlying plaintiffs regarding whether and to what extent AWAC's policies provide coverage in connection with a construction defect lawsuit now pending in the District Court of the State of Colorado, Garfield County, under the heading *Jamin Cook et al. v. Ironbridge Homes, LLC et al.*, Case No. C-2010-CV-142 (the "Colorado Litigation").

**RESPONSE:** The allegations in Paragraph 1 call for a legal conclusion to which a response is not required.  To the extent that a response is required, the allegations in Paragraph 1 are denied.

2.    Plaintiff Allied World Assurance Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

**RESPONSE: American Home lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2.  To the extent that a response is required, the allegations in Paragraph 2 are denied.**

3.    Defendant Lehman Brothers Holdings Inc. ("LBHI") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

**RESPONSE: Upon information and belief, the allegations in Paragraph 3 are admitted.**

4.    Defendant LB Rose Ranch LLC is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

**RESPONSE: Upon information and belief, the allegations in Paragraph 4 are admitted.**

5.    Defendants Vaughan Counts, Thisha McBride, Charlie Lawson, Sarahliz Lawson, Stephanie Mosher, Steve Mew, Kori New, Craig Willis, Pamela Willis, The Koreich 1981 Trust, James Vidakovich Revocable Trust, Gary Gray, Michael Cryan, Brian Alonge, Andre Pontin, Julie Pontin, Patrick M. Nesbitt, David Ice, Lisa Ice, Richard Moore, Daniel Hock, Toni Hock, J. Christine Amini, Neil Ross, the Sohrab Amini Trust, Joseph S. Davis, Kirstin F. Davis, Tina Rochowiak, Chadwick Mickschl and Sarah Mickschl (collectively, the "Colorado Plaintiffs"), are

3

the plaintiffs in the Colorado Litigation. With the exception of Andre Pontin and Julie Pontin, the Colorado Plaintiffs are the owners of single family residences located in the Ironbridge PUD subdivision in Glenwood Springs, Colorado. Andre Pontin and Julie Pontin are the former owners of a single family residence in the Ironbridge PUD that was foreclosed upon. Each of the Colorado Plaintiffs is seeking or has obtained judgments against Rose Ranch. According to the Stipulation, Agreement and Order Granting Limited Relief from the Automatic Stay entered by this Court on December 12, 2014 [Doc. 47375], the Colorado Plaintiffs' may only seek insurance assets to satisfy their judgments.

**RESPONSE: American Home admits that the Colorado Plaintiffs are plaintiffs in the Colorado Litigation. American Home lacks knowledge or information sufficient to form a belief regarding the allegations pertaining to the Colorado Plaintiffs' ownership interests in the referenced properties and regarding the alleged foreclosure involving Andre Pontin and Julie Pontin. To the extent that a response to those allegations is required, those allegations are denied. American Home admits that pursuant to the Stipulation, Agreement and Order Granting Limited Relief from the Automatic Stay entered by this Court on December 12, 2014 [Doc. 47375], the Colorado Plaintiffs' may only seek insurance assets to satisfy any judgments entered in their favor in the Colorado Litigation.**

6.     Nominal Defendant American Home Assurance Company ("American Home") is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

**RESPONSE: The allegations in Paragraph 6 are admitted.**

7.     Nominal Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in New York, New York.

4

RESPONSE: The allegations in Paragraph 7 are admitted.

## JURISDICTION

8.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases under chapter 11 of title II of the United States Code in the Bankruptcy Court of the Southern District of New York. Rose Ranch commenced its Chapter 11 Case on February 9, 2009.

RESPONSE: The allegations in Paragraph 8 are admitted.

9.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 7001(1) and 7001(9).

RESPONSE: The allegations in Paragraph 9 are admitted.

10.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this action is related to Rose Ranch's bankruptcy case.

RESPONSE: The allegations in Paragraph 10 are admitted.

11.     This is a non-core proceeding related to a bankruptcy case pursuant to 28 U.S.C. § 157(b)(1) in which AWAC asks this Court to order declaratory relief pursuant to § 3001 of the New York Civil Practice Law and Rules, the federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202; and pursuant to this Court's equitable authority pursuant to 11 U.S.C. § 105(a) and otherwise.

RESPONSE: The allegations in Paragraph 11 are admitted.

12.     Pursuant to Fed. R. Bankr. P. 7008(a), AWAC consents to entry of final orders and judgments by the bankruptcy court in this adversary proceeding only.

RESPONSE: This paragraph states AWAC's legal position, is not an allegation directed at American Home, and therefore no response is required.

13.     AWAC waives its right to a jury trial with respect to this adversary proceeding only.

5

**RESPONSE:** This paragraph states AWAC's legal position, is not an allegation directed at American Home, and therefore no response is required.

## BACKGROUND

14.     On May 14, 2010, certain Colorado Plaintiffs commenced suit against defendants other than Rose Ranch in the Colorado Litigation alleging claims arising out of alleged defects in the residences that plaintiffs purchased from defendants Ironbridge Homes, LLC or Ironbridge Mountain Cottages, LLC (collectively, "Ironbridge Homes"). The crux of the complaint was that the Colorado Plaintiffs' properties had sustained damages as a result of alleged settlement due to the properties having been designed and/or constructed improperly on hydro-collapsible soils.

**RESPONSE:** Upon information and belief, the allegations in Paragraph 14 are admitted.

15.     On March 18, 2011, the Colorado Plaintiffs filed in this Court their motion for relief from the automatic stay extant in this Chapter 11 case in order to name LBHI and Rose Ranch as defendants in the Colorado Litigation for the announced purpose of allowing the Colorado Plaintiffs to recover damages related to their claims from LBHI and LBBR's insurance policies as defined in that motion. By ordered stipulation entered in this Court on November 18, 2011, relief from the automatic stay was granted to permit the Colorado Plaintiffs to assert claims relating to the design, construction or maintenance of the golf course. [See Doc. #22336.]

**RESPONSE:** Upon information and belief, the allegations in Paragraph 15 are admitted.

16.     On April 5, 2012, the Colorado Plaintiffs filed their *Third Amended Complaint and Jury Demand* in the Colorado Litigation naming LBHI and Rose Ranch as defendants. The Colorado Plaintiffs claimed the settlement of their properties had been exacerbated by irrigation from the neighboring Ironbridge Golf Course (the "Golf Course") owned by Rose Ranch.

RESPONSE: **Upon information and belief, the allegations in Paragraph 16 are admitted.**

17.    On August 29, 2014, the Colorado Plaintiffs sought permission of the court in the Colorado Litigation to file a *Sixth Amended Complaint and Jury Demand* (the *"Sixth Amended Complaint"*) against Rose Ranch in order to add additional claims and causes of action against Rose Ranch.

**RESPONSE: Upon information and belief, the allegations in Paragraph 17 are admitted.**

18.    By ordered stipulation entered in this Court on December 14, 2014, relief from the automatic stay was extended to the Colorado Plaintiffs so that they could pursue these additional claims and causes of action against Rose Ranch. [See Doc. #47375.] On December 15, 2014, the court in the Colorado Litigation granted the Colorado Plaintiffs' motion to file the *Sixth Amended Complaint.*

**RESPONSE: Upon information and belief, the allegations in Paragraph 18 are admitted.**

19.    In the *Sixth Amended Complaint and Jury Demand* (the *"Sixth Amended Complaint"),* the Colorado Plaintiffs allege that in 2004, Rose Ranch and co-defendant Hansen Construction, Inc. ("Hansen") entered into Purchase and Sale Agreement (the "Agreement") pursuant to which Rose Ranch agreed to sell lots in the Ironbridge Subdivision to Hansen. Plaintiffs allege that the Agreement created a joint venture in which Rose Ranch and Hansen would have a joint interest in the lots upon which the Colorado Plaintiffs' properties were eventually built, would share in the profits and losses from the sales of the properties, and would engage in joint decisions regarding the design, budgeting and the marketing of the project. The specific claims

7

asserted against Rose Ranch in the Colorado Plaintiffs' *Sixth Amended Complaint* that have not been dismissed are as follows:

- Negligence resulting in property damage for failing to ensure that all design, development, construction and repair work was performed in accordance with industry standards;

- Negligence per se based on alleged violation of the uniform building code, § 6- 6.5-101 (duty of sellers to disclose soils reports), and C.R.S. § 12-61-801 et seq. (duties of real estate brokers to disclose relevant information);

- Misrepresentation/nondisclosure resulting in property damage for failing to disclose information related to the dangers of hydro-compactive soils;

- Negligence for lateral seepage (i.e., water from the golf course); and

- Breach of fiduciary duty owed by Rose Ranch appointed board members for failing to maintain and repair the infrastructure, which allowed water to reach and negatively impact the foundations of the homes; for making decisions to implement design review guidelines that required the use of irrigation; and for the failure to fully and reasonably communicate with homeowners regarding the deficiencies and inadequacies of the Ironbridge projects' water management systems.

**RESPONSE: American Home admits only that the allegations in Paragraph 19 generally summarize allegations made in the Sixth Amended Complaint, and denies that the allegations in Paragraph 19 fully and completely set forth all allegations in the Sixth Amended Complaint and refers to the Sixth Amended Complaint for its full and complete contents.**

20.    Trial in the Colorado Litigation commenced July 6, 2015, and concluded on July 28, 2015, with a jury rendering verdicts in favor of the Colorado Plaintiffs and against Rose Ranch. The jury found, *inter alia*, that:

a.    Rose Ranch was a developer of residential property at the Ironbridge subdivision;

b.    Rose Ranch entered into a joint venture with Ironbridge Homes, LLC and Hansen for Phase I of the project;

c.    Rose Ranch entered into a joint venture with Ironbridge Mountain Cottages, LLC and Hansen for Phase II of the project;

d.    Rose Ranch hired various third parties, including Ironbridge Homes, Hansen and Hepworth-Pawlak Geotechnical, Inc. ("HP Geotech") to engage in an inherently dangerous activity on its behalf;

e.    Rose Ranch consciously conspired and deliberately pursued a common plan or scheme with various parties, including Ironbridge, Hansen, and HP Geotech, to engage in conduct that was negligent, that involved a negligent misrepresentation or nondisclosure, or which was a breach of its fiduciary duties; and

f.    Rose Ranch was liable to each plaintiff for negligence, negligent misrepresentation (including negligent nondisclosure) and breach of fiduciary duty.

**RESPONSE: American Home admits that the trial in the Colorado Litigation commenced July 6, 2015, and concluded on July 28, 2015, and that the jury rendered verdicts in favor of the Colorado Plaintiffs. American Home denies that the allegations in Paragraph 20 fully and completely set forth the verdicts in the Colorado Litigation and refers to those verdicts for their full and complete contents.**

21.    The jury found that Colorado Plaintiffs sustained the following damages (broken down by lot):

| Plaintiff | Lesser of Cost of Repair or FMV | Past repairs and mitigation | Other past and future actual damages | Physical annoyance, discomfort, inconvenience, aggravation and loss of enjoyment of the home |
|---|---|---|---|---|
| Alonge (Lot 105) | $316,992.69 | $1,337.00 | $29,000.00 | $0.00 |
| Alonge (Lot 170) | $214,210.79 | $1,337.00 | $6,400.00 | $0.00 |
| Amini | $378,450.81 | $3,771.00 | $0.00 | $10,000.00 |
| Counts | $239,215.30 | $0.00 | $13,372.00 | $0.00 |
| Davis | $263,989.45 | $71,530.00 | $0.00 | $25,000.00 |
| Hock | $656,000.00 | $21,507.00 | $0.00 | $25,000.00 |

| | | | |
|---|---|---|---|
| Ice | $270.585.60 | $1,500.00 | $14,518.00 | $25,000.00 |
| Kornreich (Lot 141) | $277,316.04 | $0.00 | $0.00 | $0.00 |
| Kornreich (Lot 147) | $296,331.61 | $35,000.00 | $0.00 | $0.00 |
| Lawson | $397,396.92 | $2,836.00 | $24,000.00 | $25,000.00 |
| McBride | $290,358.27 | $879.00 | $0.00 | $25,000.00 |
| Mickschl | $194,915.07 | $912.00 | $0.00 | $25,000.00 |
| Moore | $270,329.34 | $0.00 | $0.00 | $25,000.00 |
| Mosher | $279,790.19 | $1,200.00 | $0.00 | $25,000.00 |
| Nesbitt | $468,323.55 | $65,000.00 | $48,000.00 | $10,000.00 |
| New | $274,136.31 | $5,000.00 | $0.00 | $25,000.00 |
| Rochowiak | $199,224.10 | $0.00 | $0.00 | $25,000.00 |
| **Plaintiff** | **Lesser of Cost of Repair or FMV** | **Past repairs and mitigation** | **Other past and future actual damages** | **Physical annoyance, discomfort, inconvenience, aggravation and loss of enjoyment of the home** |
| Vidakovich | $270,845.28 | $113,749.77 | $18,000.00 | $25,000.00 |
| Willis | $254,014.24 | $2,845.00 | $0.00 | $25,000.00 |
| Pontin | $0.00 | $5,000.00 | $0.00 | $25,000.00 |
| | $5,812,425.56 | $333,403.77 | $153,290.00 | $345,000.00 |
| | | | **Total:** | $6,644,119.23 |

RESPONSE: Upon information and belief, the allegations in Paragraph 21 are admitted.

22.    The Colorado Plaintiffs seek to hold Rose Ranch liable for at least the amount of damages awarded by the jury under various theories of liability, which amounts potentially implicate one or more of the insurance policies issued by AWAC.

RESPONSE: American Home lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 22 pertaining to what the Colorado Plaintiffs "seek". Furthermore, the remaining allegations in Paragraph 22 call for a legal conclusion to which a response is not required. To the extent that a response is required, all allegations in Paragraph 22 are denied.

## THE POLICIES

23.    Upon information and belief, American Home issued the following primary general liability insurance policies to LBHI and under which Rose Ranch is an insured. Upon further

10

information and belief, Rose Ranch is an insured under these American Homes primary general

liability policies:

| Policy No. | Policy Period | Limits |
|---|---|---|
| 4571645 | 8/1/04 – 8/1/05 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4571645 | 8/1/05 – 8/1/06 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4571645 | 8/1/06 – 8/1/07 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4571645 | 8/1/07 – 8/1/08 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |

| Policy No. | Policy Period | Limits |
|---|---|---|
| 5473514 | 9/30/04 – 9/30/05 | $1,000,000 per occurrence<br>$10,000,000 general aggregate<br>$1,000,000 products-completed operations aggregate |
| 5749696 | 9/30/05 – 9/30/06 | $1 000,000 per occurrence<br>$10,000,000 general aggregate<br>$ 1,000,000 products-completed operations aggregate |
| 5759349 | 9/30/06 – 9/30/07 | $1,000,000 per occurrence<br>$10,000,000 general aggregate<br>$1,000,000 products-completed operations aggregate |
| 1595543 | 9/30/07 – 9/30/08 | $1,000,000 per occurrence<br>$10,000,000 general aggregate<br>$1,000,000 products-completed operations aggregate |

**RESPONSE:** The allegations in Paragraph 23 call for a legal conclusion to which a response is not required. To the extent that a response is required, American Home admits only that it issued insurance policies to LBHI for the policy periods alleged and bearing the policy number alleged, but denies that the allegations in Paragraph 23 fully and completely set forth all terms and conditions in those policies and refers to the policies themselves for their full and complete terms and conditions. Answering further, American Home denies that it has a duty under any of the policies to indemnify Rose Ranch in connection with the Colorado Litigation. All remaining allegations are denied.

24.    Upon information and belief, National Union issued the following primary general liability insurance policies to LBHI. Upon further information and belief, Rose Ranch is an insured under these National Union primary general liability policies:

| Policy No. | Policy Period | Limits |
|---|---|---|
| 4571645 | 8/1/08 – 8/1/09 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4573023 | 8/1/09 – 8/1/10 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |
| 4573023 | 8/1/10 – 8/1/11 | $1,000,000 per occurrence<br>$2,000,000 general aggregate<br>$2,000,000 products-completed operations aggregate |

**RESPONSE:** **The allegations in Paragraph 24 are not directed at American Home and also call for a legal conclusion to which a response is not required. To the extent that a response is required, American Home denies that the allegations in Paragraph 24 fully and completely set forth all terms and conditions in the alleged policies and refers to the policies themselves for their full and complete terms, and denies all remaining allegations.**

25.     Upon information and belief, National Union also issued the following umbrella liability insurance policies to LBHI. Upon further information and belief, Rose Ranch is an insured under these National Union umbrella policies:

| Policy No. | Policy Period | Limits |
|---|---|---|
| 2130740 | 8/1/02 – 8/1/03 | $25,000,000 x/o American Home primary |
| 2860449 | 8/1/03 – 8/1/04 | $25,000,000 x/o American Home primary |
| 2860759 | 8/1/04 – 8/1/05 | $25,000,000 x/o American Home primary |
| 4484870 | 8/1/05 – 8/1/06 | $25,000,000 x/o American Home primary |
| Policy No. | Policy Period | Limits |
| 4485579 | 8/1/06 – 8/1/07 | $25,000,000 x/o American Home primary |
| 9835121 | 8/1/07 – 8/1/08 | $25,000,000 x/o American Home primary |
| 6081831 | 8/1/08 – 8/1/09 | $25,000,000 x/o National Union primary |
| 9835264 | 9/30/07 – 11/30/08 | $25,000,000 x/o American Home primary |
| 2227085 | 11/30/08 – 9/30/09 | $25,000,000 x/o National Union primary |

**RESPONSE:** **The allegations in Paragraph 25 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies that the allegations in Paragraph 25.**

26.     AWAC issued an Umbrella Liability Insurance Policy to LBHI under policy no. C012682/001 for the policy period August 1, 2009 to August 1, 2010 (the "2009-2010 AWAC Umbrella Policy"). Said policy has limits of $25,000,000 for each occurrence and in the aggregate, excess of the National Union primary policy for the same policy period. Rose Ranch is an insured under the 2009-2010 AWAC Umbrella Policy. A true and correct copy of the 2009-2010 AWAC Umbrella Policy is attached hereto as Exhibit 2.A.

<u>RESPONSE</u>: **The allegations in Paragraph 26 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies the allegations in Paragraph 26.**

27.    The 2009-2010 AWAC Umbrella Policy was renewed under policy no. 0305- 8109 for the policy period August 1, 2010 to August 1, 2011 (the "2010-2011 AWAC Umbrella Policy"). Said policy also has limits of $25,000,000 in excess of the National Union primary policy for the same policy period. Rose Ranch is an insured under the 2010-2011 A WAC Umbrella Policy. A true and correct copy of the 2010-2011 AWAC Umbrella Policy is attached hereto as Exhibit 2.B.

<u>RESPONSE</u>: **The allegations in Paragraph 27 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies the allegations in Paragraph 27.**

28.    Unless expressly stated, the 2009-2010 AWAC Umbrella Policy and the 2010- 2011 AWAC Umbrella Policy have the same policy terms and will be collectively referred to as the "AWAC Umbrella Policies."

<u>RESPONSE</u>: **The allegations in Paragraph 28 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies the allegations in Paragraph 28.**

29.    The insuring agreements for the AWAC Umbrella Policies, as modified by those policies' Designated Premises Limitation Endorsement, state, in relevant part:

I.    **INSURING AGREEMENT- COMMERCIAL UMBRELLA LIABILITY**

A.    We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal and Advertising Injury** to which this insurance

applies or because of **Bodily Injury or Property Damage** to which this insurance applies assumed by the **Insured** in an **Insured Contract.**

The amount we will pay for damages is limited as described in Section III., "Limits of Insurance."

B.     This policy applies, only if:

    1.     the **Bodily Injury or Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; ...

        *      *      *

C.     This policy applies to **Bodily Injury or Property Damage,** only if prior to the **Policy Period, no Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI. "Definitions," no executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the **Policy Period,** that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be deemed to have been known prior to the **Policy Period.**

**Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period,** known to have occurred by any **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI., "Definitions," any executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. or any employee authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period.**

D.     **Bodily Injury** or **Property Damage** will be deemed to have occurred at the earliest time when an **Insured** listed under subparagraphs 2.a., 2.b., 2.c. or 2.e. of Paragraph F. of Section VI. "Definitions," no executive officer or director listed under subparagraph 2.d. of Paragraph F. of Section VI. and no employee authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

    1.     reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

    2.     receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

    3.     becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

        *      *      *

This insurance will apply to **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** arising out of:

1.    the ownership, maintenance or use of the designated premises listed below or any property located on the premises listed below; or

2.    operations on the premises listed below or operations elsewhere that are necessary or incidental to the ownership, maintenance or use of the premises listed below.

Description and Location of Premises:

As provided under endorsement CG 21 44 to the Primary National Union Fire Insurance Company of Pittsburgh, Pa. General Liability policy #GL 4573023 effective August 1, 2009-2010 and subject to all subsequent quarterly adjustments to be remitted to Allied World Insurance Company.[1]

\*          \*          \*

**RESPONSE**: **The allegations in Paragraph 29 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies the allegations in Paragraph 29.**

30.    The AWAC Umbrella Policies contain the following relevant definitions:

C.    **Bodily injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

\*          \*          \*

F.    **Insured** means:

\*          \*          \*

Notwithstanding any of the above:

a.    no person or organization is an Insured with respect to the conduct of any current, past or newly formed ... joint venture ... that is no designated as a Named Insured in Item 1. of the Declarations[.]

\*          \*          \*

H.    Loss means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a **Suit** or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance,** then **Loss** shall include such expenses.

---

[1] The quoted language in this paragraph comes from the 2009-10 Policy. The 2010-11 Policy similarly states: "Description and Location of Premises: As provided under endorsement CG 21 44 to the Primary National Union Fire Insurance Company of Pittsburgh, Pa. General Liability policy # GL 457-30-23, effective August 1, 2010-2011 and subject to all subsequently quarterly adjustments to be remitted to Allied World Insurance Company."

16

\*      \*      \*

J.    **Named Insured** means:

    1.    the person or organization first named as the **Named Insured** in Item 3. of the Declarations (the "First Named Insured");

    2.    any other person or organization named as a **Named Insured** in Item 3. of the Declarations;

    3.    all entities that are wholly or partially owned by any **Named Insured;**

    4    any entity (including any entity over which the **Named Insured** does not exercise active managerial control but in which it has a financial or operational interest) described in a. through f. below, as now or hereafter formed or acquired:

        a.    subsidiaries,
        b.    affiliates,
        c.    associated or allied companies,
        d.    limited liability companies,
        e.    corporations, and
        f.    partnership or joint ventures;

    5.    any subsidiary of an entity described in paragraphs 4. Above.

Solely as respects paragraphs 4. and 5. of this endorsement:

    a.    Coverage is provided only for the real estate operations of either the entity formed or the entity covered pursuant to a written obligation. As used in this definition, "real estate operations" means the ownership, management or maintenance of the premises, and operations on the premises or elsewhere which are necessary or incidental to the ownership, management or maintenance of the premises; and

    b.    No person or organization is an **Insured** by virtue of the provisions of this endorsement who is not an **Insured** under applicable **Scheduled Underlying Insurance.**

\*      \*      \*

K.    **Occurrence** means:

    1.    as respects **Bodily Injury, Property Damage,** an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence.**

\*        \*        \*

Q .    **Property Damage** means:

1.    physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.    loss of use of tangible property that is not physically injured. All such loss of use will be deemed or occur at the time of the **Occurrence** that caused it.

For the purposes of this insurance, electronic date is not tangible property.

As used in this definition, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

R.    **Retained Limit** means the greater of the following amounts:

1.    the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the Insured; or

3.    the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured.**

**RESPONSE: The allegations in Paragraph 30 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies the allegations in Paragraph 30.**

31.    The 2009-2010 AWAC Umbrella Policy contains the following professional liability exclusion:

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Professional Liability**

This policy does not provide coverage for any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

It is understood this exclusion applies even if the claims against any **Insured** alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

18

**RESPONSE**: **The allegations in Paragraph 31 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies the allegations in Paragraph 31.**

32.    The 2010-2011 AWAC Umbrella Policy contains the following professional liability exclusion:

### PROFESSIONAL LIABILITY EXCLUSION (WITH LIMITED EXCEPTION FOR RESULTANT BODILY INJURY AND PROPERTY DAMAGE AND INCIDENTAL MEDICAL MALPRACTICE)

It is agreed that this policy is amended as follows:

SECTION **IV. EXCLUSIONS** is amended to include the following additional exclusion:

**Professional Liability**

This policy does not provide coverage for any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible. It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

However,

a)    if coverage for resultant **Bodily Injury or Property Damage** arising out of professional services performed by or on behalf of the **Insured** is provided by **Scheduled Underlying Insurance:**

1.    this exclusion shall not apply to such resultant **Bodily Injury or Property Damage; and**

2.    coverage under this policy for such resultant **Bodily Injury or Property Damage** will follow the terms, definitions, conditions, and exclusions of **Scheduled Underlying Insurance,** subject to the **Policy Period,** Limits of Insurance, premium, and all other terms, definitions, conditions and exclusions of this policy. Coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

**RESPONSE**: The allegations in Paragraph 32 are not directed at American Home and also call for a legal conclusion and on that basis American Home denies the allegations in Paragraph 32.

33.     The primary general liability policy underlying the 2010-2011 AWAC Umbrella Policy has two professional liability exclusions, which state:

**Exclusion - Engineers, Architects or Surveyors Professional Liability**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I Coverage A- Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I - Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
2.      Supervisory, inspection, architectural or engineering activities.

              *          *          *

**EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section 1 Coverage A - Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

1.      This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

a.   Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

b.   Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2.   Subject to Paragraph 3. below, professional services include:

a.   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b.   Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**RESPONSE: The allegations in Paragraph 33 are not directed at American Home or a policy issued by American Home, and further calls for a legal conclusion to which a response is not required. To the extent that a response is required, American Home denies that the allegations in Paragraph 33 fully and completely set forth all terms and conditions in the referenced policy and refers to the policy itself for its full and complete terms and conditions.**

34.   The AWAC Umbrella Policies also have a Construction Operations Exclusion (With Non-Structural Improvement Exception) (hereinafter, the "Construction Operations Exclusion") that states:

A.   It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Construction   Operations   (With   Non-Structural   Improvement Exception)**

This policy does not provide coverage for any liability arising out of **Construction Operations**. This exclusion applies whether or not the **Construction Operations** have been completed or are ongoing.

However, this exclusion does not apply to Bodily Injury or Property Damage arising out of Non-Structural Improvements performed by or on behalf of the Insured.

B.   It is agreed that the following definitions are added under Section VI., "Definitions":

21

**Construction Operations** means any activity by or on behalf of any **Insured**, in any capacity, regarding, related to, or in support of the erection, remodeling, or structural repairing of a building on land.

**Non-Structural Improvements** means **Construction Operations** that do not relate to the erection, repair, improvement, or replacement of:

1.    building frame;

2.    building foundations;

3.    load-bearing walls;

4.    columns, girders, trusses, beams and spandrels that are necessary to the stability of the building structure; or

5.    any other element or component of the building necessary to the stability of the building structure.

**Non-Structural Improvements** include the installation, repair, improvement, and replacement of fixtures.

**RESPONSE: The allegations in Paragraph 34 are not directed at American Home and also call for a legal conclusion to which a response is not required. To the extent that a response is required, American Home denies the allegations in Paragraph 34.**

35.    The AWAC Umbrella Policies also contain the following exclusions:

G.    **Damage to Your Work**
This policy does not provide coverage for **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*        \*        \*

K.    **Expected or Intended Injury**
This policy does not provide coverage for **Bodily Injury or Property Damage** expected or intended from the standpoint of the **Insured.** However, this exclusion does not apply to **Bodily Injury or Property Damage** resulting from the use of reasonable force to protect persons or property.

RESPONSE: The allegations in Paragraph 35 are not directed at American Home and also call for a legal conclusion to which a response is not required. To the extent that a response is required, American Home denies the allegations in Paragraph 35.

## FIRST CAUSE OF ACTION – DECLARATORY RELIEF: GOVERNING LAW

36.     AWAC repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

RESPONSE: American Home repeats and incorporates by reference its responses to Paragraphs 1 through 35 as though fully set forth herein.

37.     Because the AWAC Umbrella Policies were negotiated, issued and delivered in the State of New York to LBHI, under applicable choice of law rules, AWAC contends New York law governs any dispute concerning or relating to the AWAC Umbrella Policies as they apply to Rose Ranch, including whether or not coverage is provided for any claims in the Colorado Litigation and/or the meaning, interpretation or operation of any policy term, definition or provision.

REPONSE:   American Home lacks knowledge or information sufficient to form a belief as to the location(s) where the AWAC policies were "negotiated, issued and delivered" and regarding what AWAC "contends" with regard to governing law and on that basis American Home denies the allegations in Paragraph 37.

38.     Upon information and belief, one or more of the defendants (in particular, the Colorado Plaintiffs) contend that Colorado law, rather than New York law, governs any dispute concerning or relating to the AWAC Umbrella Policies as they apply to Rose Ranch, including whether or not coverage is provided for any claims in the Colorado Litigation and/or the meaning, interpretation or operation of any policy term, definition or provision.

RESPONSE: American Home lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 38 pertaining to what the Colorado Plaintiffs "contend" regarding governing law and on that basis American Home denies the allegations in Paragraph 38.

39.     There are substantive difference between New York and Colorado law as applied to the claims in the Colorado Litigation. For example, there is an actual conflict in the substantive law of Colorado and New York as it relates to whether the Colorado Plaintiffs have alleged or proven an "occurrence," defined in the AWAC Umbrella Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under New York law, the allegations set forth in the Colorado Litigation pertaining to the alleged liability of Rose Ranch as a developer for damages to the Colorado Plaintiffs' properties caused by the faulty design or construction of those properties by Rose Ranch do not constitute an "occurrence" as defined by the A WAC Umbrella Policies. Conversely, Colorado statute purports to require courts to "presume that the work of a construction professional that results in property damage, including damage to the work itself or other work, is an accident unless the property damage is intended and expected by the insured." C.R.S. § 13-20-808(3) (emphasis added).

RESPONSE: The allegations in Paragraph 39 call for a legal conclusion to which a response is not required.

40.     Upon information and belief, American Horne's primary policies and National Union's primary and umbrella policies define "occurrence" similarly to, if not identical to, the AWAC Umbrella Policies. Upon further information and belief, New York law also applies to the interpretation of those policies.

RESPONSE: The allegations in Paragraph 40 call for a legal conclusion to which a response is not required.

24

41.    There is an actual and justiciable controversy between AWAC, on one hand, and one or more of the defendants, on the other, as to whether New York or Colorado law should apply and whether the claims in the Colorado Litigation meet the requirements for coverage under the "occurrence" definition of the AWAC Umbrella Policies and otherwise.

**RESPONSE:  American Home admits the allegations in Paragraph 41.**

42.    By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

**RESPONSE: The allegations in Paragraph 42 call for a legal conclusion to which a response is not required.**

## SECOND CAUSE OF ACTION – DECLARATORY RELIEF: INTERPRETATION OF KEY PROVISIONS AND EXCLUSIONS

43.    AWAC repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

**RESPONSE: American Home repeats and incorporates by reference its responses to Paragraphs 1 through 42 as though fully set forth herein.**

44.    With respect to the claims in the Colorado Litigation, AWAC seeks a declaration of the following:

a.    That any liability of Rose Ranch as a developer for "property damage" to the Colorado Plaintiffs' properties caused by the faulty design or construction of the Ironbridge PUD infrastructure does not constitute an "occurrence" as defined by the AWAC Umbrella Policies;

b.    That any liability of Rose Ranch as a developer for "property damage" to the Colorado Plaintiffs' properties caused by the faulty design or construction of the properties

themselves does not constitute an "occurrence" as defined by the AWAC Umbrella Policies;

c.      That any damages awarded by the jury to the Colorado Plaintiffs for "physical annoyance, discomfort, inconvenience, and aggravation, and any loss of enjoyment of the home" does not constitute "bodily injury" as defined by the AWAC Umbrella Policies;

d.      That any "bodily injury" or "property damage," or continuation of such "bodily injury" or "property damage," that was known to have occurred by a qualifying insured prior to the inception of the 2009-2010 AWAC Umbrella Policy is not covered;

e.      That any "bodily injury" or "property damage," or continuation of such

"bodily injury" or "property damage," that was known to have occurred by a qualifying insured prior to the inception of the 2010-2011 A WAC Umbrella Policy is not covered;

f.      That the Colorado Plaintiffs' claim for Misrepresentation/Nondisclosure Resulting in Property Damage (fifth claim for relief) does not constitute an "occurrence" under the AWAC Umbrella Policies;

g.      That to the extent the liability of Rose Ranch relates to its participation in a joint venture, Rose Ranch is not an insured under the AWAC Umbrella Policies because such liability does not arise out of "real estate operations" as that term is defined in the AWAC Umbrella Policies;

h.      That any liability of Rose Ranch for "property damage" resulting from the negligent design or construction of the infrastructure or the properties themselves is not covered because it does not arise out of the ownership, maintenance or use of such

designated premises or operations elsewhere that are necessary or incidental to the ownership, maintenance or use of such designated premises;

   i.      That any "bodily injury" or "property damage" for which Rose Ranch is liable arising out of acts, errors, omissions, malpractice or mistake of a professional nature, including but not limited to any imputed liability of HP Geotech, is excluded by the professional liability exclusions in the AWAC Umbrella Policies;

   j.      That any "bodily injury" or "property damage" for which Rose Ranch is liable arising out of "construction operations," as that term is defined in the AWAC Umbrella Policies, is excluded by the Construction Operations Exclusion;

   k.      That any "bodily injury" or "property damage" for which Rose Ranch is liable arising out of its own work (not performed by subcontractors) is excluded by the Damage To Your Work exclusion;

   l.      That any "bodily injury" or "property damage" expected or intended by Rose Ranch is excluded by the Expected Or Intended Injury exclusion;

   m.      That AWAC has no liability under the AWAC Umbrella Policies to indemnify Rose Ranch unless and until the underlying National Union primary general liability policies have exhausted their applicable per occurrence and/or aggregate limit through the payment of covered claims; and

   n.      That when the appropriate trigger and allocation law is applied, the Colorado Plaintiffs' damages are insufficient to trigger coverage under the AWAC Umbrella Policies.

**RESPONSE: American Home admits that in its Amended Complaint, AWAC seeks a judicial declaration of matters set forth in Paragraphs 44(a) - (n).**

45.     Upon information and belief, there is an actual justiciable controversy between the AWAC and the Defendants (in particular, the Colorado Plaintiffs) as to whether and to what extent the forgoing coverage defenses apply.

**RESPONSE: American Home lacks knowledge or information sufficient to form a belief regarding any alleged controversy between AWAC and any other Defendant(s) pertaining to whether any of AWAC's "coverage defenses" alleged forth in Paragraphs 44(a)-(n) "apply" and on that basis American Home denies the allegations in Paragraph 45.**

46.     By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

**RESPONSE: The allegations in Paragraph 46 call for a legal conclusion to which a response is not required.**

## THIRD CAUSE OF ACTION – DECLARATORY JUDGEMENT: ANTI-LIMITS STACKING ENDORSEMENT

47.     AWAC repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

**RESPONSE: American Home repeats and incorporates by reference its responses to Paragraphs 1 through 46 as though fully set forth herein.**

48.     Upon information and belief, American Home and/or National Union (collectively, "AIG") have reserved the right to assert that their maximum liability, if any, to Rose Ranch under their primary and umbrella policies is governed by an "Anti-Limits Stacking Endorsement", which, according to AIG, "generally provides that, to the extent a particular policy and any Other Insurance issued by an AIG member company applies to the same claim, suit, or "occurrence", the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of all applicable policies."

**RESPONSE:** American Home admits only that it has reserved its rights to assert various policy terms, conditions and exclusions, including the referenced Anti-Limits Stacking Endorsement, as a defense to coverage under policies it issued to LBHI in connection with the Colorado Litigation. American Home denies that the allegations in Paragraph 48 fully and completely set forth American Home's reservation of rights and the terms of the Anti-Limits Stacking Endorsement, and refers to its reservation of rights and to the policies that American Home issued to LBHI for their complete terms and conditions. All remaining allegations are denied.

49. No "Anti-Limits Stacking Endorsement" is included within the National Union policies underlying the AWAC Umbrella Policies. Accordingly, no such limitation or cap on the National Union's maximum available limits under the policies underlying the AWAC Umbrella Policies exists.

**RESPONSE:** The allegations in Paragraph 49 are not directed at American Home and further call for a legal conclusion, to which a response is not required. If a response is required, the allegations in Paragraph 49 are denied.

50. To the extent National Union or any other defendant contends otherwise, a justiciable controversy actually exists between AWAC and National Union as to whether National Union's maximum liability under its policies underlying the AWAC Umbrella Policies.

**RESPONSE:** The allegations in Paragraph 50 are not directed at American Home and further call for a legal conclusion, to which a response is not required. Furthermore, American Home lacks knowledge or information sufficient to form a belief regarding positions taken by any other defendant(s). To the extent a response is required, the allegations in Paragraph 50 are denied.

51.    By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

**RESPONSE: The allegations in Paragraph 51 call for a legal conclusion to which a response is not required.**

WHEREFORE, American Home respectfully requests that the Court enter an order:

1.    declaring that the Anti-Limits Stacking Endorsement referenced in AWAC's Amended Complaint limits American Home's liability, if any, in connection with the Colorado Litigation; and

2.    awarding any and all other relief that the Court deems necessary and just.

## AFFIRMATIVE DEFENSES

Defendant American Home alleges the following Affirmative Defenses:

1.    The Third Cause of Action in the Amended Complaint fails to state a claim upon which relief can be granted against American Home.

2.    AWAC's Third Cause of Action is barred, in whole or in part, by the terms, exclusions, conditions, endorsements, and limitations in the policies referred to by AWAC in the Amended Complaint.

3.    AWAC's Third Cause of Action is barred unless AWAC can prove the existence, terms, conditions, exclusions, endorsements, and limitations of the policies referred to by AWAC in the Amended Complaint.

4.    AWAC's Third Cause of Action does not describe the claims made against AIG Property Casualty Company with sufficient particularity to enable AIG Property Casualty Company to determine all defenses (including defenses based on the terms, conditions, or exclusions of the relevant policies) it has to this suit. American Home therefore reserves the right

to assert additional defenses that may be pertinent to the Third Cause of Action that may be ascertained through discovery and investigation.

## CROSS-CLAIM

NOW COMES Defendant, AMERICAN HOME ASSURANCE COMPANY, ("American Home"), by its attorneys, HINKHOUSE WILLIAMS WALSH LLP, and for its cross-claim against the other defendants in this action, states as follows:

### NATURE OF ACTION

1.     American Home issued multiple liability insurance policies to Lehman Brothers Holdings Inc. ("LBHI") under which LBHI's subsidiary, LB Rose Ranch LLC ("Rose Ranch") has asserted that it an insured.  LBHI and Rose Ranch are Debtors in the bankruptcy case referenced in AWAC's Amended Complaint filed in this action. American Home seeks a judicial declaration of the rights and other legal obligations of American Home, if any in connection with a construction defect lawsuit pending in the District Court of the State of Colorado, Garfield County, and captioned *Jamin Cook et al. v. Ironbridge Homes, LLC et al.*, Case No. C-2010-CV-142 (the "Colorado Litigation").

### PARTIES

2.     Plaintiff American Home Assurance Company is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

3.     Defendant LBHI is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

4.     Defendant Rose Ranch is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York.

5.     Defendants Vaughan Counts, Thisha McBride, Charlie Lawson, Sarahliz Lawson, Stephanie Mosher, Steve Mew, Kori New, Craig Willis, Pamela Willis, The Koreich 1981 Trust, James Vidakovich Revocable Trust, Gary Gray, Michael Cryan, Brian Alonge, Andre Pontin, Julie Pontin, Patrick M. Nesbitt, David Ice, Lisa Ice, Richard Moore, Daniel Hock, Toni Hock, J. Christine Amini, Neil Ross, the Sohrab Amini Trust, Joseph S. Davis, Kirstin F. Davis, Tina Rochowiak, Chadwick Mickschl and Sarah Mickschl (collectively, the "Colorado Plaintiffs"), are the plaintiffs in the Colorado Litigation.

6.     Each of the Colorado Plaintiffs is seeking or has obtained judgments against Rose Ranch.

7.     According to the Stipulation, Agreement and Order Granting Limited Relief from the Automatic Stay entered by this Court on December 12, 2014 [Doc. 47375], the Underlying Plaintiffs' may only seek insurance assets to satisfy their judgments.

## JURISDICTION

8.     LBHI and certain of its subsidiaries have commenced voluntary cases under chapter 11 of title 11 of the United States Code in the Bankruptcy Court of the Southern District of New York.

9.     Rose Ranch's Chapter 11 Case was commenced on February 9, 2009.

10.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 7001(1) and 7001(9).

11.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this action is related to Rose Ranch's bankruptcy case.

12.     This cross-claim is a non-core proceeding related to a bankruptcy case pursuant to 28 U.S.C. §157(b)(1).

33

13.     American Home seeks declaratory relief pursuant to § 3001 of the New York Civil Practice Law and Rules, the federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202; and pursuant to this Court's equitable authority pursuant to 11 U.S.C. § 105(a) and otherwise.

14.     Pursuant to Fed. R. Bankr. P. 7008(a), American Home consents to entry of final orders and judgments by the bankruptcy court, but its consent is given solely in this adversary proceeding.

## BACKGROUND

15.     On May 14, 2010, certain Colorado Plaintiffs filed the Colorado Litigation against defendants other than Rose Ranch and alleged various claims for construction defects in residences that they purchased from defendants Ironbridge Homes, LLC or Ironbridge Mountain Cottages, LLC (collectively, "Ironbridge Homes").

16.     On March 18, 2011, the Colorado Plaintiffs filed a motion in this Court seeking relief from the automatic stay so that they could name LBHI and Rose Ranch as defendants in the Colorado Litigation.

17.     On November 18, 2011 this Court entered a stipulation that relief from the automatic stay was granted to permit the Colorado Plaintiffs to assert claims relating to the design, construction or maintenance of a golf course located near their residences that was owned and/or operated by Rose Ranch. [See Doc. #22336.] The stipulation further provided that any recovery of any judgment or settlement against LBHI and Rose Ranch was limited to LBHI's and Rose Ranch's available insurance.

18.     On August 29, 2014, the Colorado Plaintiffs sought leave to file a *Sixth Amended Complaint and Jury Demand* (the "*Sixth Amended Complaint*") against Rose Ranch in the Colorado Litigation to add additional claims and causes of action against Rose Ranch.     A

stipulation entered in this Court on December 14, 2014 provided that the Colorado Plaintiffs could pursue these additional claims and causes of action against Rose Ranch. [See Doc. #47375.] Just as with the November 18, 2011 stipulation, the December 14, 2014 stipulation limited recovery for any judgment or settlement against Rose Ranch to Rose Ranch's available insurance.

19.    The additional claims asserted by the Colorado Plaintiffs against Rose Ranch (and other co-defendants) in the *Sixth Amended Complaint and Jury Demand* (the "*Sixth Amended Complaint*") generally include, but are not limited to, the following:

- Negligence resulting in property damage for failing to ensure that all design, development, construction and repair work was performed in accordance with industry standards;

- Negligence per se based on alleged violation of the uniform building code, § 6-6.5-101 (duty of sellers to disclose soils reports), and C.R.S. § 12-61-801 et seq. (duties of real estate brokers to disclose relevant information).

- Misrepresentation/nondisclosure resulting in property damage for failing to disclose information related to the dangers of hydro-compactive soils;

- Negligence for lateral seepage (i.e., water from the golf course); and

- Breach of fiduciary duty owed by Rose Ranch appointed board members for failing to maintain and repair the infrastructure, which allowed water to reach and negatively impact the foundations of the homes; for making decisions to implement design review guidelines that required the use of irrigation; and for the failure to fully and reasonably communicate with homeowners regarding the deficiencies and inadequacies of the Ironbridge projects' water management systems.

20.    Trial in the Underlying Litigation commenced July 6, 2015, and concluded on July 28, 2015, with a jury rendering verdicts in favor of the Colorado Plaintiffs and against Rose Ranch and finding generally that:

a.    Rose Ranch was a developer of residential property at the Ironbridge subdivision;

35

b.    Rose Ranch entered into a joint venture with Ironbridge Homes, LLC and Hansen for Phase I of the project;

c.    Rose Ranch entered into a joint venture with Ironbridge Mountain Cottages, LLC and Hansen for Phase II of the project;

d.    Rose Ranch hired various third parties, including Ironbridge Homes, Hansen and Hepworth-Pawlak Geotechnical, Inc. ("HP Geotech") to engage in an inherently dangerous activity on its behalf;

e.    Rose Ranch consciously conspired and deliberately pursued a common plan or scheme with various parties, including Ironbridge, Hansen, and HP Geotech, to engage in conduct that was negligent, that involved a negligent misrepresentation or nondisclosure, or which was a breach of its fiduciary duties; and

f.    Rose Ranch was liable to each plaintiff for negligence, negligent misrepresentation (including negligent nondisclosure) and breach of fiduciary duty.

21.    The damages awarded to the Colorado Plaintiffs in the Colorado Litigation potentially implicate one or more of the insurance policies issued by American Home.

## THE POLICIES

22.    American Home issued the following primary-layer general liability insurance policies to LBHI:

| Policy No. | Policy Period |
|------------|---------------|
| 4571645 | 8/1/04 – 8/1/05 |
| 4571645 | 8/1/05 – 8/1/06 |
| 4571645 | 8/1/06 – 8/1/07 |
| 4571645 | 8/1/07 – 8/1/08 |
| 5473514 | 9/30/04 – 9/30/05 |
| 5749696 | 9/30/05 – 9/30/06 |
| 5759349 | 9/30/06 – 9/30/07 |

| 1595543 | 9/30/07 – 9/30/08 |

23.    Unless expressly stated otherwise, the American Home Policies have the same policy terms and will be collectively referred to as the "American Home Policies."

24.    The American Home Policies each define "named insured" and also, by definition and/or endorsement, identify other entities that may also qualify as an "insured" or "additional insured."

25.    The American Home Policies provide that coverage is limited to damages that the insured is legally obligated to pay because of "property damage" that takes place during the policy period and is caused by an "occurrence", as those terms are defined.   The term "property damage" is generally defined as physical injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured.   The term "occurrence" is defined, in part, as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

26.    The American Home Policies are subject to exclusions for "expected" or "intended" injury, which precludes coverage for "property damage" expected or intended from the standpoint of the insured.

27.    The American Home Policies also contain exclusions for "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

28.    The Policies also contain certain "business risk exclusions" that generally preclude coverage for

- "property damage" to that particular part of property that must be repaired or replaced because "your work" was incorrectly performed on it;

- coverage for "property damage" to "your product" arising out of it or any part of it;

- coverage for "property damage" to "your work" that is included in the "products-completed operations hazard";

- coverage for "property damage" to "impaired property" or property that has not been physically injured; and

- coverage for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of "your product," "your work" or "impaired property" if withdrawn or recalled from the market because of a known or suspected defect, deficiency, inadequacy or dangerous condition.

29.     Coverage under these policies is also limited to covered property damage arising from completed operations.

**A. American Home Policy in effect from August 1, 2004 to August 1, 2005**

30.     The policy in effect during this policy period precludes coverage for any "joint venture…that is not shown as a Named insured in the Declarations."

31.     The policy during this period also contains a Designated Professional Services Exclusion Endorsement which provides that the policy does not apply to "property damage" due to the rendering or failure to render any professional service. Professional Services is described as "all services of the named insured".

**B. American Home Policy in effect from August 1, 2005 to August 1, 2006**

32.     The named insured under the Policy in this period is Lehman Brothers Holdings, Inc.  The policy does not contain a named insured endorsement adding any subsidiaries of the named insured.

33.    The policy in this period precludes coverage for any "joint venture…that is not shown as a Named insured in the Declarations."

34.    The policy in this period also limits coverage to all premises or projects of the insured, and in this regard includes Location 005 – "Clubs, Golf or Country" in Denver, Colorado as an insured project.

35.    The policy during this period also contains a Designated Professional Services Exclusion Endorsement which provides that the policy does not apply to "property damage" due to the rendering or failure to render any professional service. Professional Services is described as "all services of the named insured".

**C. American Home Policy in effect from August 1, 2006 to August 1, 2007**

36.    The policy in effect during this policy period precludes coverage for any "joint venture…that is not shown as a Named insured in the Declarations."

37.    The policy contains a Designated Professional Services Exclusion Endorsement which provides that the policy does not apply to "property damage" due to the rendering or failure to render any professional service. Professional Services is described as "all services of the named insured".

**D. American Home Policy in effect from August 1, 2007 to August 1, 2008**

38.    The policy during this period contains a Contractor's Professional Liability Exclusion which excludes from coverage "property damage" arising out of professional services, including engineering, architectural or surveying services and hiring independent professionals to provide engineering, architectural or surveying services.    Professional services include "[p]reparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and…[s]upervisory or inspection activities".

39.     The policy during this period also contains an Engineers, Architects or Surveyors-Professional liability Exclusion Endorsement which exclusions from coverage "property damage" arising out of the rendering of or failure to render any professional services by the insured or any engineer, architect or surveyor performing work on the insureds behalf. Professional services include "[p]reparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and…[s]upervisory, inspection, architectural or engineering activities".

E.  **American Home Policies in effect from September 30, 2004 to September 30, 2008**

40.     These policies do not provide coverage for a joint venture that is not identified as a Named Insured in the Declarations.

**FIRST CAUSE OF ACTION – DECLARATORY RELIEF: GOVERNING LAW**

41.     American Home repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

42.     Because the American Home Policies were negotiated, issued and delivered in the State of New York to LBHI, under applicable choice of law rules, American Home contends New York law governs any dispute concerning or relating to the Policies as they apply to Rose Ranch, including whether or not coverage is provided for any claims in the Colorado Litigation and/or the meaning, interpretation or operation of any policy term, definition or provision.

43.     Under New York law, the allegations set forth in the Colorado Litigation pertaining to the alleged liability of Rose Ranch as a developer for damages to the Colorado Plaintiffs' properties caused by the faulty design or construction of those properties by Rose Ranch do not constitute an "occurrence" as defined by the American Home Policies.

44.     There is an actual and justiciable controversy between American Home, on one hand, and one or more of the defendants, on the other, as to the applicable law.

45.    By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

## SECOND CAUSE OF ACTION – DECLARATORY RELIEF: INTERPRETATION OF KEY PROVISIONS AND EXCLUSIONS IN THE AMERICAN HOME POLICIES

46.    American Home repeats and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

47.    With respect to the claims in the Colorado Litigation, American Home seeks a declaration of the following:

a.    That any liability of Rose Ranch as a developer for "property damage" to the Colorado Plaintiffs' properties caused by the faulty design or construction of the Ironbridge PUD infrastructure does not constitute an "occurrence" as defined by the American Home Policies;

b.    That any liability of Rose Ranch as a developer for "property damage" to the Colorado Plaintiffs' properties caused by the faulty design or construction of the properties themselves does not constitute an "occurrence" as defined by the American Home Policies;

c.    That any damages awarded by the jury to the Colorado Plaintiffs for "physical annoyance, discomfort, inconvenience, and aggravation, and any loss of enjoyment of the home" does not constitute "bodily injury" as defined by the American Home Policies;

d.    That any "bodily injury" or "property damage," or continuation of such "bodily injury" or "property damage," that was known to have occurred by a qualifying insured prior to the inception of each policy, is not covered under that policy;

e.    That the Colorado Plaintiffs' claim for Misrepresentation/Nondisclosure

Resulting in Property Damage (fifth claim for relief) does not constitute an "occurrence" under the American Home Policies;

      f.      That to the extent the liability of Rose Ranch relates to its participation in a joint venture, Rose Ranch is not an insured under the American Home Policies in effect from August 1, 2004 through 2007 and from September 30, 2004 through 2008.

      g.      That any liability of Rose Ranch for "property damage" resulting from the negligent design or construction of the infrastructure or the properties themselves is not covered because it does not arise out of the ownership, maintenance or use of such designated premises or operations elsewhere that are necessary or incidental to the ownership, maintenance or use of such designated premises in the American Home Policy in effect from August 1, 2005 through 2006;

      h.      That any "property damage" for which Rose Ranch is liable arising out the rendering or failure to render any professional service, is excluded by the professional services exclusions in the American Home Policies in effect from August 1, 2004 through 2007;

      i.      That any "bodily injury" or "property damage" for which Rose Ranch is liable arising out of its own work (not performed by subcontractors) is excluded by the Damage To Your Work exclusion;

      j.      That any "bodily injury" or "property damage" expected or intended by Rose Ranch is excluded;

      k.      The "property damage" arising out of professional services, including engineering, architectural or surveying services and hiring independent professionals to provide engineering, architectural or surveying services is excluded by the Contractor's Professional Liability Exclusion in the American Home Policy in effect from August 1,

2007 through 2008; and

   l.  That "property damage" arising out of the rendering of or failure to render any professional services by the insured or any engineer, architect or surveyor performing work on the insureds behalf is excluded by the Engineers, Architects or Surveyors-Professional liability Exclusion Endorsement in the American Home Policy in effect from August 1, 2007 through 2008.

  48.  Upon information and belief, there is an actual justiciable controversy between the American Home and the Defendants (in particular, the Underlying Plaintiffs) as to whether and to what extent the forgoing coverage defenses apply.

  49.  By reason of the foregoing, a declaratory judgment is needed to set forth and establish the rights, duties, and liabilities of the parties.

## **PRAYER**

WHEREFORE, American Home prays for judgment as follows:

  1.  That the Court make and enter a binding judicial declaration in American Home's favor and in accordance with American Home's contentions set forth in the claims for relief; and

  2.  Such other and further relief that the Court deems just and proper.

Dated: November 13, 2015    ZEICHNER ELLMAN & KRAUSE LLP

                By: _____
                Michael S. Davis
                Robert Guttmann
                1211 Avenue of the Americas
                40th Floor
                New York, NY  10036
                Tel:  (212) 223-0400
                mdavis@zeklaw.com
                rguttmann@zeklaw.com

HINKHOUSE WILLIAMS WALSH LLP
Joseph A. Hinkhouse
Richard A. Hodyl
180 N. Stetson
Suite 3400
Chicago, IL  60601
Tel:  (312) 784-5400
jhinkhouse@hww-law.com
rhodyl@hww-law.com

*Attorneys for Defendant National Union Fire
Insurance Company of Pittsburgh, Pa.*

## CERTIFICATE OF SERVICE

Michael W. Antonivich, hereby certifies pursuant to 28 U.S.C. 1746 and under penalty of perjury that on the 13th day of November, 2015, I served a true copy of the within **AMERICAN HOME ASSURANCE COMPANY'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND CROSS-CLAIM** on the attorneys listed below by first class mail at the last known addresses indicated:

Brian Matthew Margolies
Traub Lieberman Straus
& Shewsberry LLP
7 Skyline Drive
Hawthorne, NY 10532

Dated: November 13, 2015

_____
Michael W. Antonivich