Hearing Date: February 23, 2016
Reply Deadline: February 10, 2016

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
7 Skyline Drive
Hawthorne, NY 10532
914-347-2600
*Attorney for Allied World Assurance Company (U.S.) Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
In re: LEHMAN BROTHERS HOLDINGS, INC. et al. : Chapter 11
: 
: Case No. 08-13555
Debtors. :
:
---------------------------------------------------------------- x
ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., :
: Ad. Pro. No. 15-01128-scc
Plaintiff, :
:
v. :
:
LB ROSE RANCH, LLC et al. :
Defendants. :
:
---------------------------------------------------------------- x

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S RESPONSE IN
OPPOSITION TO COLORADO HOMEOWNERS' MOTION TO DISMISS FOR
LACK OF JURISDICTION OR IN THE ALTERNATIVE, MOTION TO ABSTAIN

## TABLE OF CONTENTS

Statement of Compliance With Local Rule 9013-1(a) ..................................................................1

I.   STATEMENT OF FACTS........................................................................................................1

II.  ARGUMENT AND AUTHORITY .........................................................................................4

    A.    The Colorado Homeowners' Motion To Dismiss Should Be Denied Because This Court Has "Related To" Jurisdiction ..................................................4

    B.    The Requirements for Mandatory Abstention Are Not Present Because There is No State Court Action..................................................................................7

    C.    The Court Should Not Abstain Pursuant Section 1334(c)(1)..................................9

        1.    The effect or lack thereof on the efficient administration of the estate...........................................................................................................10

        2.    The extent to which state law issues predominate over bankruptcy issues ......................................................................................10

        3.    The difficulty or unsettled nature of the applicable state law .....................10

        4.    The presence of a related proceeding commenced in state court or other nonbankruptcy court ..................................................................11

        5.    The jurisdictional basis, if any, other than 28 U.S.C. § 1334. ....................11

        6.    The degree of relatedness or remoteness of the proceeding to the main bankruptcy case...................................................................................12

        7.    The substance rather than form of an asserted "core" proceeding..............12

        8.    The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court ...................................................12

        9.    The burden on the court's docket................................................................12

        10.    The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties..............12

        11.    The existence of a right to a jury trial .......................................................14

12. The presence in the proceeding of nondebtor parties ..................................14

III. CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bank of America, N.A. v. Lightstone Holdings, LLC (In re Extended Stay, Inc.)*,
  418 B.R. 49, 55 (Bankr. S.D.N.Y. 2009), aff'd, 435 B.R. 139 (S.D.N.Y. 2010)) ........................ 4

*Beebe Int'l, Inc. v. French Am. Banking Corp., (In re Wedtech Corp.)*,
  72 B.R. 313, 315-16 (Bankr. S.D.N.Y. 1987) ........................................................................... 5

*Cody, Inc. v. County of Orange & Town of Woodbury (In re Cody, Inc.)*,
  281 B.R. 182, 190 (S.D.N.Y. 2002) ........................................................................................... 9

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800, 817 (1976) ........................................................................................................... 9

*F.D.I.C. v. Mars*,
  821 P.2d 826, 830 (Colo. App. 1991) ...................................................................................... 13

*Garcia v. Century Surety Company*,
  2014 WL 5314693 at *1 (D. Colo. Oct. 17, 2014) ..................................................................... 8

*Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*,
  37 P.3d 485, 488 (Colo. App. 2001) ........................................................................................ 13

*Hoag v. Assurance Co. of America*,
  149 P.3d 798, 803-04 (Colo. 2007) .......................................................................................... 13

*Hoang v. Monterra Homes (Powderhorn) LLC*,
  129 P.3d 1028, 1033 .................................................................................................................. 13

*In re Pan American Corp.*,
  950 F.2d 839, 846 (2d Cir. 1991) ............................................................................................... 9

*In re Portrait Corp. of Am.*,
  406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009) ................................................................................ 9

*In re WorldCom, Inc. Securities Litigation*,
  293 B.R. 308, 331 (S.D.N.Y. 2003) ..................................................................................... 8, 10

*Joremi Enters. v. Hershkowitz (In re New 118th LLC)*,
  396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) ................................................................................ 4

*Lehman Bros. Holdings, Inc. v. Intel Corp. (In re Lehman Bros. Holdings, Inc.)*,
  502 B.R. 376, 382 (Bankr. S.D.N.Y. 2013) ................................................................................ 4

*New 118th LLC*,
  396 B.R. at 890 ..................................................................................................................... 4

*Pacor, Inc. v. Higgins (In re Pacor, Inc.)*,
  743 F.2d 984, 994 (3d Cir. 1984) ......................................................................................... 4

*Taub v. Hershkowitz (In re Taub)*,
  417 B.R. 186, 191 (Bankr. E.D.N.Y. 2009) .......................................................................... 9

### Rules

28 U.S.C. § 1334 ................................................................................................... i, 4, 7, 8, 9, 11

28 U.S.C. § 1334(b) ...................................................................................................................... 4

28 U.S.C. § 157(a) ........................................................................................................................ 4

Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.) ............................ 4

Chapter 15 ..................................................................................................................................... 9

Rule 9013-1(a) .......................................................................................................................... i, 1

Section 1334(c)(1) .................................................................................................................. i, 8, 9

Title 11 ..................................................................................................................................... 4, 9

COMES NOW Plaintiff Allied World Assurance Company (U.S.) Inc. ("AWAC"), by and through its undersigned counsel, responds to and opposes the Colorado Homeowners' *Motion to Dismiss for Lack of Jurisdiction or in the Alternative, Motion to Abstain* as follows:

### Statement of Compliance With Local Rule 9013-1(a)

This motion includes citations to the applicable rules and statutory authority as support and a discussion of their application to the matters discussed herein. Accordingly, AWAC submits that this brief satisfies Rule 9013-1(a) of the Local Rules of the United States Bankruptcy Court for the Southern District of New York and respectfully requests waiver of the need to file a supporting memorandum of law.

### I. STATEMENT OF FACTS

1. AWAC issued two consecutive umbrella liability insurance policies to debtor Lehman Brothers Holdings Inc. ("LBHI"), the first under policy no. C012682/001 for the policy period August 1, 2009 to August 1, 2010 and the second under policy no. 0305-8109 for the policy period August 1, 2010 to August 1, 2011 (collectively, the "Policies"). The AWAC Policies sit excess of insurance policies issued by defendant American Home Assurance Company (in the 2009-2010 policy year) and National Union Fire Insurance Company of Pittsburgh, PA (in the 2010-2011 policy year). Both American Home and National Union are AIG companies.

2. LBHI is the First Named Insured in the Policies' Declarations. However, the Policies each contain a Broad Form Named Insured Endorsement that adds, as additional Named Insureds, *inter alia*, "all entities that are wholly or partially owned" by LBHI. Thus, most, if not all, of LBHI's subsidiaries are additional Named Insureds by virtue of the Broad Named Insured

Endorsement. Debtor LB Rose Ranch, LLC ("LBRR"), as a subsidiary of LBHI, is among the various entities potentially qualifying as Named Insureds under the Policies.

3. In 2010, the Colorado Homeowners[1] commenced litigation in Colorado State Court against defendants other than LBRR in an action captioned *Jamin Cook et al. v. Ironbridge Homes, LLC et al.*, Case No. C-2010-CV-142 (the "Colorado Litigation"). The Colorado Litigation initially alleged claims arising out of alleged defects in the residences that Colorado Homeowners had purchased from Ironbridge Homes, LLC or Ironbridge Mountain Cottages, LLC (collectively, "Ironbridge Homes"), and which had been built by Hansen Construction, Inc. ("Hansen").[2] The crux of the Colorado Homeowners' complaint was that properties had sustained damages as a result of alleged settlement due to the properties having been designed and/or constructed improperly on hydro-collapsible soils.

4. On March 18, 2011, the Colorado Homeowners filed in this Court a motion for relief from the automatic stay in order to name LBHI and LBRR as defendants in the Colorado Litigation. [Doc. #15202.] By ordered stipulation entered in this Court on November 18, 2011, relief from the automatic stay was granted to permit the Colorado Homeowners to assert claims relating to the design, construction or maintenance of the golf course that bordered the Colorado Homeowners' properties, but limiting any recovery to applicable insurance. [Doc. #22336.]

5. On April 5, 2012, the Colorado Homeowners filed their *Third Amended Complaint and Jury Demand* in the Colorado Litigation naming LBHI and LBRR as defendants.

---

[1] The "Colorado Homeowners" refers collectively to Defendants Vaughan Counts, Thisha McBride, Charlie Lawson, Sarahliz Lawson, Stephanie Mosher, Steve New, Kori New, Craig Willis, Pamela Willis, The Kornreich 1981 Trust, James Vidakovich Revocable Trust, Gary Gray, Michael Cryan, Brian Alonge, Andre Pontin, Julie Pontin, Patrick M. Nesbitt, David Ice, Lisa Ice, Richard Moore, Daniel Hock, Toni Hock, J. Christine Amini, Neil Ross, the Sohrab Amini Trust, Joseph S. Davis, Kirstin F. Davis, Tina Rochowiak, Chadwick Mickschl and Sarah Mickschl.

[2] Neither the Ironbridge Homes entities nor Hansen Construction are debtors in LBHI's consolidated bankruptcy proceedings nor are they subsidiaries of LBHI.

2

The Colorado Homeowners claimed therein that the settlement of their properties had been exacerbated by irrigation from the neighboring Ironbridge Golf Course owned by LBRR.

6. By ordered stipulation entered in this Court on December 14, 2014, relief from the automatic stay was extended to the Colorado Homeowners so that they could pursue additional claims and causes of action against LBRR, but again only to the extent that insurance available to LBRR might cover their claims. [Doc. #47375.] On December 15, 2014, the court in the Colorado Litigation granted the Colorado Homeowners' motion to file a *Sixth Amended Complaint and Jury Demand* (the "*Sixth Amended Complaint*"). The *Sixth Amended Complaint* greatly expanded the allegations against LBRR, alleging that LBRR was part of an unnamed joint venture with Hansen and Ironbridge Homes,[3] and that LBRR was allegedly jointly and severally liable for all the damages sustained by the Colorado Homeowners.

7. The Colorado Homeowners claims were tried to a jury beginning July 6, 2015, and concluded on July 28, 2015, with a jury rendering verdicts in favor of the Colorado Homeowners and against LBRR. Because of issues concerning the degree, if any, to which the arbitration awards entered against Hansen and Ironbridge Homes should offset the jury verdicts, the Court in the Colorado Litigation has yet to enter judgment against LBRR.[4]

8. AWAC initiated this action to determine its rights and obligations under the Policies with respect to LBRR liabilities to the Colorado Homeowners as set forth in its operative complaint.[5]

---

[3] The Colorado Homeowners' claims against Ironbridge Homes and Hansen had been referred by the Court in the Colorado Litigation to binding arbitration pursuant to contractual agreements.

[4] The arbitration awards were satisfied by Hansen.

[5] To the extent there are misspellings of defendants' names, AWAC has no objection to amending the caption accordingly.

3

## II. ARGUMENT AND AUTHORITY

A.   **The Colorado Homeowners' Motion To Dismiss Should Be Denied Because This Court Has "Related To" Jurisdiction.**

The crux of the Colorado Homeowners' argument in support of dismissal is that this Court supposedly does not have "related to" jurisdiction. AWAC respectfully disagrees. The resolution of claims is "related to" a bankruptcy case if that resolution will have some "conceivable effect" on the bankruptcy estate.

Under 28 U.S.C. § 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), Standing Order M-431 refers all such cases to this Court. *See* Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.). Typically, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings, while proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. *See Lehman Bros. Holdings, Inc. v. Intel Corp. (In re Lehman Bros. Holdings, Inc.)*, 502 B.R. 376, 382 (Bankr. S.D.N.Y. 2013) (citing *Bank of America, N.A. v. Lightstone Holdings, LLC (In re Extended Stay, Inc.)*, 418 B.R. 49, 55 (Bankr. S.D.N.Y. 2009), aff'd, 435 B.R. 139 (S.D.N.Y. 2010)). "A proceeding is related to a case under title 11, and falls within its non-core jurisdiction, if the outcome might have a conceivable effect on the estate." *Id.* (quoting *Joremi Enters. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008)). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *New 118th LLC*, 396 B.R. at 890 (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984), accord *Beebe Int'l, Inc. v. French Am. Banking Corp., (In re Wedtech Corp.)*,

4

72 B.R. 313, 315-16 (Bankr. S.D.N.Y. 1987). Under this standard, the relief sought by AWAC in this adversary proceeding unquestionably is related to the Lehman chapter 11 cases because the outcome might have a conceivable effect on the Lehman debtors' bankruptcy estates.

The Colorado Homeowners assert that because they will only seek to collect any judgment against insurance proceeds, this case cannot have any conceivable effect on the bankruptcy estate. This argument, however, is too myopic in the context of insurance coverage. In making their argument, the Colorado Homeowners focus only on themselves, ignoring that the insurance policies issued by AWAC, and the underlying policies issued by AIG, were not issued to LBRR to insure LBRR exclusively, but were instead issued to LBHI. LBRR is an insured only because it is a subsidiary of LBHI. In addition to LBRR, numerous other entities are insured under the Policies, including (1) LBHI; (2) all entities that are wholly or partially owned by LBHI, and (3) for purposes of "real estate operations," numerous other entities that may have been formed or acquired by LBHI, including subsidiaries, affiliates, associated or allied companies, limited liability companies, etc.[6] [*First Amended Complaint for Declaratory Relief*, Exhibit 2.A. at Endorsement 27 & Exhibit 2.B. at Endorsement 26.]

Thus, while it may be true that *these* claimants have restricted their recovery to insurance proceeds – meaning that if their claims fall within the applicable insuring agreements and are not excluded, they can receive compensation from insurance, but if not, they cannot proceed against LBRR itself – other claimants may not be so restricted and may still look to the debtor-insureds to recover if insurance does not provide coverage for their claims. Thus, insurance coverage determinations can have an effect on the bankruptcy estate. This is true *regardless of the outcome of this case*. For example:

---

[6] The precise identification of parties qualifying as Named Insureds is set forth in the Broad Named Insured Endorsements found in the Policies.

5

- If, as AWAC contends, coverage is not owed for the Colorado Homeowners' claims, the coverage determinations could have a collateral estoppel or res judicata effect on claims against other debtor-insureds. This could occur, for instance, if the court determines construction defects are not an "occurrence," or that misrepresentation/nondisclosure claims do not constitute an "occurrence," or that "real estate operations," defined as the "ownership, management or maintenance of the premises,", do not include the construction of a residential community; and

- Conversely, if the Colorado Homeowners establish coverage, the available aggregate limits will be reduced, potentially leading to other claimants seeking recovery directly from the debtors. Additionally, if coverage exists, the theory under which damages are allocated among various policy years could affect how damages are allocated for other debtors.

The Colorado Homeowners may respond that each claim has to be taken on its own merit. While, in the abstract, this is true, judicial coverage determinations may nevertheless have a practical, if not legally preclusive, effect on other claims.

The Colorado Homeowners may argue that these are only hypothetical possibilities. However, there is no evidence that all claims potentially covered by the Policies have been disallowed and expunged, or that any other claimants have, like the Colorado Homeowners, limited their recovery to insurance. In fact, the Ironbridge Homes entities themselves have at least two outstanding claims against LBRR, involving the very same development the Colorado Homeowners live in, which have not been disallowed. [Doc. #51663 (indefinitely adjourning hearing on objection to Claim Nos. 66154 and 30848).] Although the Colorado Homeowners

6

may argue these are not claims subject to insurance, there is no evidence that the Ironbridge Homes entities have agreed, and there is no judicial determination to this effect. Additionally, the Ironbridge Homes entities filed a motion for relief from the automatic stay to pursue cross-claims and counterclaims against LBRR arising out of the Colorado Homeowners' claims. [Doc. #23551.] The hearing on this motion was postponed, [Doc. #31173], but there is nothing to indicate this motion has been abandoned.

Moreover, if there were no concerns that the insurance coverage determinations could have any conceivable effect on the bankruptcy estate, why has LBHI shown such a profound interest in the Colorado litigation and AIG and AWAC's coverage positions? For example, although the Colorado Homeowners admit that LBRR had no financial exposure in the Colorado Litigation, LBHI sent Scott Allan, Senior Vice President for Insurance Risk Management, and Christy Searl, in-house counsel and Senior Vice President for Litigation, to at least two mediations in the Colorado Litigation. Further, LBRR challenged coverage positions taken by AIG and even retained insurance coverage counsel. [Exhibit 1, Letter from Scott Allan to AIG.] More recently, LBRR filed counterclaims *in this litigation* against AWAC. [See *Answer and Counterclaims* filed 11/13/15.]

In sum, there is ample evidence that the determination of the insurance coverage issues raised by AWAC (and by AIG in its cross-claims) could conceivably affect the bankruptcy estate, thus giving rise to "non-core" jurisdiction. Accordingly, dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1334 would be improper.

B.   **The Requirements for Mandatory Abstention Are Not Present Because There is No State Court Action.**

AWAC agrees that the Colorado Homeowners set forth the proper factors under 28 U.S.C. § 1334(c)(2) for mandatory abstention:

7

> A party seeking mandatory abstention must prove **each** of the following: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be "timely adjudicated" in state court.

*In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 331 (S.D.N.Y. 2003) (citations omitted) (emphasis added).

The Colorado Homeowners' argument for mandatory abstention critically fails the fifth element – there is no pending state court action related to the insurance available under AWAC's Policies.[7] The Colorado Litigation involves only LBRR's liability to the Colorado Homeowners, not whether insurance applies to the Colorado Homeowners' claims. Because all elements must be met for mandatory abstention to apply, no further inquiry is necessary. *In re WorldCom Inc. Securities Litigation*, 293 B.R. at 331. The Colorado Homeowners' motion for mandatory abstention must be denied.

Nevertheless, with respect to timely adjudication, the Colorado Homeowners suggestion that the Colorado state court will timely adjudicate the coverage issues is debatable. The Colorado Litigation itself was filed in 2010. All defendants except LBRR were sent to arbitration in August 2013, yet, still, the trial did not commence until July of 2015. And even now judgment has not been entered. Based on the history of the Colorado Litigation, there is no justifiable reason to believe that coverage litigation will proceed in a timely fashion in Colorado state court, especially where the Colorado court will be considering issues of New York law.

---

[7] The Colorado Homeowners suggest that they will file a garnishment proceeding against AWAC and AIG in Colorado state court 14 days after the court in the Colorado Litigation enters judgment in order to seek to collect upon their judgment from insurance proceeds. If they do so, the AWAC has the right to remove that action to Federal court, which will, once again, mean there is no state court action. *Garcia v. Century Surety Company*, 2014 WL 5314693 at *1 (D. Colo. Oct. 17, 2014).

8

C.  **The Court Should Not Abstain Pursuant Section 1334(c)(1).**

The Colorado Homeowners argue that if mandatory abstention does not apply, the Court should exercise its discretion under 28 U.S.C. § 1334(c)(1) and nevertheless abstain. This Section states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1334(c)(1) is interpreted according to "principles developed under the judicial abstention doctrines." *In re Pan American Corp.*, 950 F.2d 839, 846 (2d Cir. 1991). According to those principles, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and may abstain only for a few "extraordinary and narrow exception[s]." *Id.* at 813 (citation omitted). The burden is upon the Colorado Homeowners to establish that abstention is warranted.

Courts in the Second Circuit are to consider the following factors when determining whether to exercise discretion to abstain. "Not all of these factors need be applied, however," *In re Portrait Corp. of Am.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009) (citing *Cody, Inc. v. County of Orange & Town of Woodbury (In re Cody, Inc.)*, 281 B.R. 182, 190 (S.D.N.Y. 2002)), nor is abstention determined by a simple counting of factors. *Taub v. Hershkowitz (In re Taub)*, 417 B.R. 186, 191 (Bankr. E.D.N.Y. 2009).

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy

9

matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re WorldCom Inc. Securities Litigation*, 293 B.R. at 332 (citations omitted).

As demonstrated below, the Court should not exercise its discretion to abstain from the "virtually unflagging obligation" to exercise its jurisdiction.

1. **The effect or lack thereof on the efficient administration of the estate.**

Contrary to the Colorado Homeowners' contention, the insurance coverage issues in this case may impact the estate of LBRR and/or LBHI. This is explained in AWAC's response to the motion to dismiss, *supra*. This factor, therefore, weighs against abstention.

2. **The extent to which state law issues predominate over bankruptcy issues.**

When viewed in a vacuum, the Colorado Homeowners correctly identify that this case involves state law issues concerning the interpretation of insurance policies. However, the state law issues involve New York law, not Colorado law, yet the Colorado Homeowners want a Colorado court with no familiarity with New York law to determine these issues. Because the determination of these issues will affect the estate (see discussion above), this factor does not support abstention.

3. **The difficulty or unsettled nature of the applicable state law.**

The Colorado Homeowners claim that the state law is unsettled and difficult. AWAC disagrees. The law on insurance policy interpretation in New York is well-developed.[8] This factor does not support abstention.

---

[8] A WestLaw search of the phrase "insurance coverage" in New York state courts revealed 4,047 results.

4. <u>**The presence of a related proceeding commenced in state court or other nonbankruptcy court.**</u>

There is no related proceeding in state court or other nonbankruptcy court. This is the only case involving the interpretation of AWAC's insurance policies in the context of the Colorado Homeowners' claims. This factor should be dispositive of the Court's decision to refuse to abstain from hearing this case.

The Colorado Homeowners misleadingly state that the Court in the Colorado Litigation is "extremely familiar with the case, the parties and the issues." This is false. The Court is the Colorado Litigation is familiar only with the liability issues, but has never been called upon to consider any insurance coverage issue. Indeed, although the Colorado Homeowners are only permitted by their ordered stipulation to recover from insurance (meaning that the claims need to be covered), the Colorado Court gave no consideration to insurance coverage when deciding summary judgment motions or when instructing the jury, nor was it asked to. And although AWAC appeared briefly in that case, the appearance was limited to assuring that it would have access to, and could review, certain sworn testimony that certain parties did not want AWAC to see. [*See, Emergency Motion for Limited Intervention by Allied World Assurance Company Re: Protective Order Concerning Arbitration Transcripts* filed on March 17, 2015, and granted in open court on March 20, 2015.]

This factor weighs heavily against abstention and is arguably dispositive of the issue.

5. <u>**The jurisdictional basis, if any, other than 28 U.S.C. § 1334.**</u>

Federal jurisdiction is also supported by diversity of citizenship.

11

6. <u>The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.</u>

As discussed above, the insurance coverage issues decided in this case could have an effect on the bankruptcy case, regardless of how the issues are decided. This factor weighs against abstention.

7. <u>The substance rather than form of an asserted "core" proceeding.</u>

This factor is inapplicable since this is not a core proceeding.

8. <u>The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.</u>

AWAC agrees with the Colorado Homeowners that this factor is inapplicable since this is not a core proceeding.

9. <u>The burden on the court's docket.</u>

AWAC does not presume to advise this Court of its existing burdens. However, AWAC does not believe that this action will unduly burden the Court. It is a straight-forward insurance coverage action where many of the applicable facts are already known by virtue of an underlying trial on the liability case. Counsel on both sides of the case are professional, with the expectation being that they would be able to resolve most non-dispositive disputes without the Court's intervention. AWAC submits that unless this Court is overburdened with its existing docket, this factor is neutral.

10. <u>The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties.</u>

AWAC initiated this action in the debtor's home state, which is also the where AWAC is located and where the Policies in question were negotiated and issued. AWAC seeks a determination of insurance coverage under New York law. Yet the Colorado Homeowners accuse AWAC of forum shopping. But it is the Colorado Homeowners, not AWAC, who wish

12

to forum shop. The Colorado Homeowners speak of a garnishment proceeding they plan to initiate, but fail to inform the Court what that actually means:

- It means the same court who heard the underlying trial will decide the insurance coverage issues. While the Colorado Homeowners may argue that this is advantageous because the court has some familiarity with the underlying facts, it is potentially prejudicial to AWAC because the court may have an entirely human inclination to want to see the Colorado Homeowners compensated based on testimony heard in the underlying action, even though that testimony may be entirely irrelevant to the coverage issues.

- It means that the right to a jury trial is denied to AWAC for any disputed issues of fact because in Colorado, garnishment proceedings are equitable in nature. *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 488 (Colo. App. 2001); *F.D.I.C. v. Mars*, 821 P.2d 826, 830 (Colo. App. 1991).

- It means that AWAC will lose its *right* to conduct any discovery since Colorado does not permit discovery as a matter of right in garnishment proceedings. *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028, 1033, *rev'd on other grounds, Hoag v. Assurance Co. of America*, 149 P.3d 798, 803-04 (Colo. 2007). Instead, AWAC must hope that the court exercises its discretion to allow for discovery. *Id.*

- It means that the Colorado Homeowners, in their home forum, will have LBHI's insurance policies, which were issued in New York, interpreted by a court who likely has no familiarity with New York law.

13

It is the Colorado Homeowners, not AWAC, who are forum shopping. This factor weighs against abstention.

11.     **The existence of a right to a jury trial.**

As discussed above, the Colorado Homeowners ask this Court to abstain so that they can initiate a garnishment proceeding where the right to a jury trial of disputed facts does not exist. Conversely, AWAC's right to a jury trial on disputed issues of fact will be preserved here in the Southern District of New York, either at the District Court or, if the parties consent, in this Court. This factor weighs heavily against abstention.

12.     **The presence in the proceeding of nondebtor parties.**

The Colorado Homeowners and AIG both have a direct financial stake in the determination of the coverage issues. Accordingly, if this factor weighs in favor of abstention, it does so minimally.

The factors that weigh in favor of abstention are greatly outweighed in importance by those that weigh against abstention, particularly the facts: (1) this proceeding does have an effect on the Lehman bankruptcy estates, contrary to the Colorado Homeowners' assertions; (2) as of this date, there is not another proceeding pending in state court; (3) the Colorado garnishment proceeding contemplated by the Colorado Homeowners would deprive AWAC the right to a jury trial on disputed issues of fact; and (4) the contemplated proceeding would ask a Colorado judge to decide issues of New York law.

14

## III. CONCLUSION

The Court should deny the Colorado Homeowners' motion to dismiss and their motion for mandatory or discretionary abstention.

Dated: January 20, 2016
      Hawthorne, New York

                              Respectfully submitted,

                              TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

                              By: /s/ Brian Margolies
                              Brian Margolies
                              7 Skyline Drive
                              Hawthorne, NY 10532
                              bmargolies@traublieberman.com
                              (T) (914) 586-7020
                              (F) (914) 347-8898
                              *Attorneys for Allied World Assurance Company (U.S.) Inc.*

LEGAL\25447744\3