Joseph A. Hinkhouse
Richard A. Hodyl
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson
Suite 3400
Chicago, IL  60601
Tel:  (312) 784-5400
jhinkhouse@hww-law.com
rhodyl@hww-law.com

Michael S. Davis
Peter Janovsky
Robert Guttmann
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
40th Floor
New York, NY 10036
Tel: (212) 223-0400
mdavis@zeklaw.com
rguttmann@zeklaw.com

*Attorneys for Defendants American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ x | | |
| In re: LEHMAN BROTHERS HOLDINGS, INC. et al. | : | Chapter 11 |
| | : | |
| Debtors. | : | Case No. 08-13555 |
| _____ x | | |
| ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., | : | Ad. Pro. No. 15-01128-scc |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **AMERICAN HOME ASSURANCE COMPANY'S AND NATIONAL UNION FIRE INSURANCE COMPANY'S JOINT RESPONSE IN OPPOSITION TO THE COLORADO HOMEOWNERS' MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO ABSTAIN** |
| LB ROSE RANCH, LLC; VAUGHAN COUNTS; THISHA MCBRIDE; CHARLIE LAWSON; SARAHLIZ LAWSON; STEPHANIE MOSHER; STEVE NEW; KORI NEW; CRAIG WILLIS; PAMELA WILLIS; THE KORNREICH 1981 TRUST; JAMES VIDAKOVICH REVOCABLE TRUST; GARY GRAY; MICHAEL CRYAN; BRIAN ALONGE; ANDRE PONTIN; JULIE PONTIN; | : | |

**PATRICK M. NESBITT; DAVID ICE; LISA ICE;**     **:**
**RICHARD MOORE; DANIEL HOCK; TONI**     **:**
**HOCK; J. CHRISTINE AMINI; NEIL ROSS; THE**     **:**
**SOHRAB AMINI TRUST; JOSEPH S. DAVIS;**     **:**
**KIRSTIN F. DAVIS; TINA ROCHOWIAK;**     **:**
**CHADWICK MICKSCHL; SARAH MICKSCHL;**     **:**
**AMERICAN HOME ASSURANCE COMPANY;**     **:**
**and NATIONAL UNION FIRE INSURANCE**     **:**
**COMPANY OF PITTSBURGH, PA**     **:**
    **:**
    **Defendants.**     **:**
——————————————————————————— **x**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................................... 3

III.    LEGAL STANDARDS .................................................................................................... 5

IV.     ARGUMENT .................................................................................................................... 6

        A.      RESOLUTION OF THIS COVERAGE ACTION MAY DIRECTLY
                AFFECT THE ESTATES OF LBRR, LBHI, AND OTHER LBHI-
                RELATED ENTITIES AND, THEREFORE, BANKRUTPCY
                JURISDICTION IS APPROPRIATE ..................................................................... 6

        B.      THE COLORADO HOMEOWNERS CANNOT PROVE ALL SIX
                ELEMENTS REQUIRED TO INVOKE MANDATORY
                ABSTENTION UNDER 28 U.S.C. § 1334(c)(2) .................................................... 9

        C.      THE COLORADO HOMEOWNERS PERMISSIVE ABSTENTION
                ARGUMENT ALSO LACKS MERIT .................................................................. 14

V.      LOCAL RULE 9013-1(a) ............................................................................................... 18

VI.     CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*ACandS, Inc. v. Travelers Cas. & Sur. Co.,*
  435 F.3d 252 (3d Cir. 2006), *cert. denied,* 547 U.S. 1159 (2006)............................................7

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC,*
  396 B.R. 602 (S.D.N.Y. 2008)................................................................................................14

*Democracy Rising PA v. Celluci,*
  603 F.2d 780 (M.D. Pa. 2009) ...............................................................................................5

*Estate of Lellock v. Prudential Ins. Co. of Am.,*
  811 F.2d 186 (3d Cir. 1987)...................................................................................................7

*Exxon Mobil Corp. v. Allapattah Services, Inc.,*
  545 U.S. 546 (2005).............................................................................................................10

*In re Adelphia Commc'ns Corp.,*
  285 B.R. 127 (Bankr. S.D.N.Y. 2002).....................................................................................9

*In re Cuyahoga Equip. Corp.,*
  980 F.2d 110 (2d Cir.1992)....................................................................................................6

*In re GunAllen Financial, Inc.,*
  443 B.R. 908 (Bankr. M.D. Fla. 2011) ...........................................................................6, 7, 8

*In re Johns-Manville Corp.,*
  517 F.3d 52, 66 (2d Cir. 2008)...............................................................................................6

*In re Johns–Manville Corp.,*
  600 F.3d 135 (2d Cir. 2010)...................................................................................................6

*In re Residential Capital, LLC,*
  519 B.R. 890 (Bankr. S.D.N.Y. 2014)...................................................................................14

*In re WorldCom, Inc. Secs. Litig.,*
  293 B.R. 308 (S.D.N.Y. 2003)....................................................................................9, 14, 15

*In re: Johns-Manville Corporation,*
  517 F.3d 52 (2d Cir. 2008).....................................................................................................6

*MacArthur Co. v. Johns–Manville Corp.,*
  837 F.2d 89 (2d Cir.1988)......................................................................................................6

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000)...................................................................................................5

*Marah Wood Productions, LLC v. Jones, et al.*,
    534 B.R. 465 (D.Conn. 2015) ...................................................................12, 14, 16

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008) .................................................................................5

*Olin Corp. v. Ins. Co. of N. Am.*,
    221 F.3d 307 (2d Cir. 2000) .................................................................................8

*SN Liquidation Inc.*
    388 B.R. 579 (Bankr. D. Del. 2008) ....................................................................7

*Tandon v. Captain's Cove Marina of Bridgeport,Inc.*,
    752 F.3d 239 (2d Cir. 2014) .................................................................................5

STATE CASES

*George A. Fuller Co. v. U.S. Fid. & Guar. Co.*,
    200 A.D.2d 255, 613 N.Y.S.2d 152 (1st Dep't 1994) ...........................................17

*Grand Cove II Condominium Assn., Inc. v. Ginsberg*,
    291 N.J.Super. 58, 676 A.2d 1123 (N.J.App.Div.1996) ........................................17

*Jamin Cook et al. v. Ironbridge Homes, LLC et al.*,
    Case No. C-2010-CV-142 ........................................................................... passim

FEDERAL STATUTES

28 U.S.C. § 157 ..........................................................................................................3, 5

28 U.S.C. § 1332 ...............................................................................................5, 9, 10, 18

28 U.S.C. § 1334 ..................................................................................................... passim

28 U.S.C. § 1334(c)(1) .................................................................................................9, 14

28 U.S.C. § 1334(c)(2) .............................................................................................9, 11, 14

28 U.S.C. § 1367(a) ........................................................................................................10

Chapter 11 of Title II of the United States Code ..................................................3, 4, 9

RULES

Fed. R. Bankr. P. 7001(1) ...........................................................................................3, 5

Fed. R. Bankr. P. 7001(9) ...........................................................................................3, 5

Fed.R.Bankr.P. 7012 ......................................................................................................5

Fed.R.Civ.P. 12(b)(1)..................................................................................................................5

Local Rule 9013-1(a) ..............................................................................................................18

**CONSTITUTIONAL PROVISIONS**

Article III of the United States Constitution ..............................................................................10

NOW COME Defendants/Cross-Plaintiffs AMERICAN HOME ASSURANCE COMPANY, ("American Home") and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("National Union") (collectively, the "Companies"), by their attorneys, ZEICHNER ELLMAN & KRAUSE LLP and HINKHOUSE WILLIAMS WALSH LLP, and for their Response in Opposition to the Colorado Homeowners' Motion to Dismiss for Lack of Jurisdiction or in the alternative, Motion To Abstain (the "Colorado Homeowners' Motion") [Doc. 19], state as follows:

## I.      PRELIMINARY STATEMENT

The Companies are putative insurers of Lehman Brothers Holdings Inc. ("LBHI") and LBHI's subsidiary, LB Rose Ranch LLC ("LBRR"), Debtors in the above-captioned bankruptcy case, under certain primary and umbrella liability insurance policies issued to LBHI (collectively the "AIG Policies").  The Companies have filed a Cross-Claim against the Homeowners in this action seeking a judicial declaration of whether and to what extent the AIG Policies provide coverage in connection with a construction defect lawsuit presently pending in the District Court of the State of Colorado, Garfield County, under the heading *Jamin Cook et al. v. Ironbridge Homes, LLC et al.*, Case No. C-2010-CV-142 (the "Colorado Litigation").

Defendants Vaughan Counts, Thisha McBride, Charlie Lawson, Sarahliz Lawson, Stephanie Mosher, Steve Mew, Kori New, Craig Willis, Pamela Willis, The Koreich 1981 Trust, James Vidakovich Revocable Trust, Gary Gray, Michael Cryan, Brian Alonge, Andre Pontin, Julie Pontin, Patrick M. Nesbitt, David Ice, Lisa Ice, Richard Moore, Daniel Hock, Toni Hock, J. Christine Amini, Neil Ross, the Sohrab Amini Trust, Joseph S. Davis, Kirstin F. Davis, Tina Rochowiak, Chadwick Mickschl and Sarah Mickschl (collectively, the "Colorado Homeowners"), are the plaintiffs in the Colorado Litigation.  With the exception of Andre Pontin and Julie Pontin, the Colorado Homeowners are the owners of single family residences located in

the Ironbridge PUD subdivision in Glenwood Springs, Colorado. Andre Pontin and Julie Pontin are the former owners of a single family residence in the Ironbridge PUD that was foreclosed upon. Each of the Colorado Homeowners is seeking or has obtained judgments against LBRR.

Although the Colorado Homeowners claim now in their Motion that this Court does not have jurisdiction over the determination of whether coverage exists under insurance policies issued by the Companies and Allied World for their claims, the record contains substantial evidence demonstrating their understanding that this Court does have jurisdiction over matters directly relating to the estate of LBRR – such as the potential depletion of the proceeds of insurance policies on which LBRR qualifies as an insured. In fact, the Colorado Homeowners have repeatedly sought this Court's authority to pursue their claims against LBRR. Their pending Motion is the third such instance. The first instance was documented in the Stipulation, Agreement and Order Among Lehman Brothers Holdings, Inc., LB Rose Ranch LLC, Pami Statler Arms LLC, and Certain Colorado Plaintiffs Providing for Limited Relief From the Automatic Stay, entered on November 18, 2011 (the "2011 Stipulation") [Doc. 22336], and the second instance was documented in a Stipulation, Agreement and Order Granting Limited Relief from the Automatic Stay entered by this Court on December 12, 2014 (the "2014 Stipulation") [Doc. 47375].

While the 2011 and 2014 Stipulations authorized the Colorado Homeowners to pursue certain claims against LBRR in Colorado state court (where the Colorado Homeowners were already involved in on-going litigation against other non-insurer defendants), the Stipulations do not bind LBRR's insurers in any way, nor do they preclude LBRR's insurers from seeking a declaratory judgment from this Court in connection with the Colorado Homeowners' claims. By

2

entering the Stipulations, the Court did not agree to refrain from exercising jurisdiction over matters involving (the potential depletion of) property of LBRR's estate.

The Stipulations did not alter this Court's jurisdiction over adversary proceedings proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 7001(1) and 7001(9), and its *continued exclusive jurisdiction* to determine all adversary proceedings relating to the Chapter 11 Cases [See Doc. 22973 at p. 90]. This insurance coverage dispute directly relates to the administration of LBRR's bankruptcy estate (namely the potential depletion of insurance assets of the estates of LBRR, LBHI, and certain LBHI-related entities that may qualify as insureds under the AIG Policies) and, therefore, constitutes a "related to" adversary proceeding within the jurisdiction of this Court.

This Court in the Southern District of New York is the proper location for this matter. The AIG Policies were issued by insurers in New York to LBHI, which was also located in New York. The policies were negotiated through and issued to insurance brokers located in New York. On these facts, it is likely that New York law will govern a determination of the parties' respective rights and duties, if any, under the Policies.

Neither mandatory nor discretionary abstention principles require the Court to dismiss or stay this coverage action. The fatal flaws in both arguments are exposed below and, for the reasons set forth herein, the Court should deny the Colorado Homeowners' Motion in its entirety.

## II.      STATEMENT OF FACTS

1.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases under Chapter 11 of Title II of the United States Code in the Bankruptcy Court of the Southern District of New York. LBRR commenced its Chapter 11 Case on February 9, 2009.

2.     On May 14, 2010, certain Colorado Homeowners commenced suit against defendants other than LBRR in the Colorado Litigation alleging claims arising out of alleged defects in the residences that plaintiffs purchased from defendants Ironbridge Homes, LLC or Ironbridge Mountain Cottages, LLC (collectively, "Ironbridge Homes").  In their complaint, the Colorado Homeowners alleged that their properties had sustained damages as a result of alleged settlement due to the properties having been designed and/or constructed improperly on hydro-collapsible soils.

3.     On March 18, 2011, the Colorado Homeowners filed in this Court their motion for relief from the automatic stay in this Chapter 11 case in order to name LBHI and LBRR as defendants in the Colorado Litigation for the announced purpose of allowing the Colorado Homeowners to recover damages related to their claims from LBHI and LBBR's insurance policies as defined in that motion.  By stipulation entered in this Court on November 18, 2011, relief from the automatic stay was granted to permit the Colorado Homeowners to assert claims relating to the design, construction or maintenance of the golf course. [See Doc. #22336.]

4.     On April 5, 2012, the Colorado Plaintiffs filed their *Third Amended Complaint and Jury Demand* in the Colorado Litigation naming LBHI and LBRR as defendants.  The Colorado Homeowners claimed the settlement of their properties had been exacerbated by irrigation from the neighboring Ironbridge Golf Course (the "Golf Course") owned by LBRR.

5.     On August 29, 2014, the Colorado Homeowners again sought permission of this Court in the Colorado Litigation to file a *Sixth Amended Complaint and Jury Demand* (the *"Sixth Amended Complaint")* against LBRR in order to add additional claims and causes of action against LBRR.  By the terms of the 2014 Stipulation, relief from the automatic stay was extended to the Colorado Homeowners so that they could pursue these additional claims and causes of

4

action against LBRR. [See Doc. #47375.] Thereafter, having obtained authorization from this Court to proceed, the Colorado Homeowners filed the *Sixth Amended Complaint.*

6.      Trial in the Colorado Litigation commenced July 6, 2015, and concluded on July 28, 2015, with a jury rendering verdicts in favor of the Colorado Homeowners and against LBRR.  However, as of the date of filing of this Response, a final judgment has not yet been entered by the court in the Colorado litigation.

7.      The Colorado Homeowners seek to hold LBRR liable for at least the amount of damages awarded by the jury under various theories of liability, which amounts potentially implicate one or more of the insurance policies issued by the Companies.

8.      The Companies were never at any time parties to the Colorado Litigation and the Colorado Litigation did not resolve, *nor did it even address*, any insurance coverage issues relating to the insurance policies issued by the Companies to LBHI that are now at issue in this adversary insurance coverage proceeding.

### III.   <u>LEGAL STANDARDS</u>

The terms of Fed.R.Civ.P. 12(b)(1) are made applicable in bankruptcy proceedings via Fed.R.Bankr.P. 7012.  A motion to dismiss filed under Fed.R.Civ.P. 12(b)(1) raises the issue of whether a federal court has jurisdiction to hear claim or case. See, e.g., *Democracy Rising PA v. Celluci*, 603 F.2d 780, 788 (M.D. Pa. 2009).  The plaintiff bears the burden of establishing that jurisdiction exists. *Tandon v. Captain's Cove Marina of Bridgeport,Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  Determining the existence of subject-matter jurisdiction is a "threshold inquiry."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

District courts have jurisdiction over adversary proceedings exists pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 7001(1) and 7001(9).  Furthermore, 28 U.S.C. § 1332

provides, in part, that: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States…."

## IV.    ARGUMENT

### A.    RESOLUTION OF THIS COVERAGE ACTION MAY DIRECTLY AFFECT THE ESTATES OF LBRR, LBHI, AND OTHER LBHI-RELATED ENTITIES AND, THEREFORE, BANKRUTPCY JURISDICTION IS APPROPRIATE

Bankruptcy jurisdiction is appropriate over "third-party non-debtor claims that directly affect the res of the bankruptcy estate."  *In re: Johns-Manville Corporation*, 517 F.3d 52, 66 (2d Cir. 2008) ; *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy [sufficient to confer bankruptcy jurisdiction] is whether its outcome might have any conceivable effect on the bankrupt estate." (internal quotation marks omitted)).

Numerous federal courts have held that insurance policies are property of a debtor's bankruptcy estate.  *See In re Johns–Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) (per curiam) ("Manville IV") ("[T]he insurance policies that Travelers issued to Manville are the estate's most valuable asset."); *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 92 (2d Cir.1988) (agreeing with the "[n]umerous courts [that] have determined that a debtor's insurance policies are property of the estate").  Thus, claims asserted by the Colorado Homeowners against the AIG Policies constitute claims against property of the debtor's bankruptcy estate.

Furthermore, several courts have held that matters involving the depletion of the policy limits of the debtor's insurance coverage have a *direct impact* on a debtor's bankruptcy estate that justifies bankruptcy jurisdiction.  For example, in *In re GunAllen Financial, Inc.*, 443 B.R. 908 (Bankr. M.D. Fla. 2011), the bankruptcy court exercised jurisdiction where the debtor was an additional insured under a policy and where the "depletion of the [policy] proceeds has and

will continue to have a direct impact on the estate." *Id. at 914.* The court "retained jurisdiction to effectuate that administration" of the proceeds of the policy. *Id.* Similarly, in *SN Liquidation Inc.* 388 B.R. 579, 584 (Bankr. D. Del. 2008), the court held that insurance policies are property of the debtor's estate and exercised jurisdiction over claims pertaining to such policies. *See, e.g., ACandS, Inc. v. Travelers Cas. & Sur. Co.,* 435 F.3d 252, 260-261 (3d Cir. 2006), *cert. denied,* 547 U.S. 1159 (2006); *Estate of Lellock v. Prudential Ins. Co. of Am.,* 811 F.2d 186, 189 (3d Cir. 1987).

The 2014 Stipulation authorizes the Colorado Homeowners to pursue LBRR's available insurance to attempt to satisfy their judgments. These claims threaten to deplete part or all of the proceeds of one or more insurance policies that constitute property of LBRR's bankruptcy estate. Because the Colorado Homeowners' claims threaten to deplete an asset of LBRR's bankruptcy estate, this coverage dispute falls squarely within the jurisdiction of this Court.

Notably absent from the Colorado Homeowners' Motion is any mention of the fact that LBHI and certain of its subsidiaries and related entities (none of which are defendants in the Colorado Litigation) may also qualify as insureds under the very same AIG Policies targeted by the Colorado Homeowners. Certain of the AIG Policies at issue generally include as insureds any subsidiary, associated, affiliated, allied or acquired company or corporation, including subsidiaries thereof (subject to the policies' terms, conditions and exclusions). Thus, the resolution of coverage issues pertaining to the Colorado Homeowners' claims may not only deplete assets of LBRR's estate, but may at the same time deplete assets included in the bankruptcy estates of other LBHI-related entities.

Where an insurance policy affords coverage to multiple debtor-entities, bankruptcy courts have properly exercised their jurisdiction to fairly allocate the proceeds with respect to each

insured entity.  *See, e.g., GunnAllen.*, 443 B.R. at 914 (approving of the use of the bankruptcy proceeding to allocate policy proceeds with respect to multiple insureds); *The Unencumbered Assets Trust v. Great American Ins. Co.*, No. 2:04-cv-908, 2007 WL 2029063 (S.D. Ohio July 10, 2007) (noting without disapproval that the bankruptcy court had granted an insurer's motion to deposit its policy limits and obtain a discharge of liability, leaving it to the bankruptcy court's discretion to determine an equitable procedure for apportioning the policy's proceeds with respect to the insureds).  Because the Colorado Homeowners' pursuit of insurance coverage for their claims threatens to deplete property of the estates of multiple LBHI-related entities, and not just LBRR, jurisdiction over that process rests exclusively with this Court, and not a Colorado state court, especially when the property is comprised of occurrence-based insurance policies.

The Colorado Homeowners assert that there is "no link" between this coverage action and LBRR's estate.  The Colorado Homeowners' assertion is misguided because the policies from which the Colorado Homeowners seek to recover are "occurrence policies," under which they cover events during the policy period, no matter how many years later the claim arises.  Said another way, termination of the policy periods for certain of the AIG Policies does not preclude claims from being asserted under those policies now, or in the future.  Under New York law, such occurrence-based comprehensive general liability policies are "triggered by occurrence of the property damage during the policy period."  *Olin Corp. v. Ins. Co. of N. Am.*, 221 F.3d 307, 321 (2d Cir. 2000).

The purpose of a Chapter 11 plan allows a debtor to reorganize, or in other words, restructure, its financial affairs. The Colorado Homeowners will directly affect that process as they seek to deplete insurance policies that otherwise would remain the property of multiple entities, not just LBRR, in the future. On these facts, the Colorado Homeowners cannot reasonably claim that their conduct bears no relation to the bankruptcy action.

For the foregoing reasons, the Colorado Homeowners' Motion should be denied in its entirety.

## B.    THE COLORADO HOMEOWNERS CANNOT PROVE ALL SIX ELEMENTS REQUIRED TO INVOKE MANDATORY ABSTENTION UNDER 28 U.S.C. § 1334(c)(2)

The Colorado Homeowners assert that mandatory abstention principles set forth in 28 U.S.C. § 1334(c)(1) and (c)(2) require the Court to abstain from presiding over this coverage dispute. The Colorado Homeowners' position is erroneous.

For mandatory abstention under 28 U.S.C. § 1334(c)(2) to apply, the Colorado Homeowners must prove all of the following six factors:

> (1) the motion to abstain/remand was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" or "arising under" the Bankruptcy code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) the action was commenced in state court; and (6) the action can be 'timely adjudicated' in state court.

*In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003) (*citing In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 143-44 (Bankr. S.D.N.Y. 2002)). Mandatory abstention principles do not apply here because the Colorado Homeowners cannot prove all six of the above statutory requirements.

28 U.S.C. § 1334 is not the sole basis for federal jurisdiction for this coverage lawsuit, eliminating Factor (4) in the mandatory abstention test. 28 U.S.C. § 1332 provides, in part, that: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States…." The Colorado Homeowners are Colorado residents. The two Companies are Pennsylvania and New York corporations with their principal place of business in New York, and Allied World is a Delaware corporation with its principal place of business in New York. On these facts, there is complete diversity among the parties.[1]

The total underlying judgment at issue is approximately $6.6 million. All but one of the plaintiffs' individual claims exceeds the $75,000 jurisdictional threshold. With regard to the one claim that is less than the statutory threshold amount, 28 U.S.C. § 1367(a) provides: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The U.S. Supreme Court held in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005), that a federal court has supplemental jurisdiction over claims of other plaintiffs who do not meet the jurisdictional amount for a diversity action, when at least one plaintiff in the action does satisfy the jurisdictional amount.

28 U.S.C. § 1334 is not the sole basis for federal jurisdiction for this coverage lawsuit because 28 U.S.C. § 1332 provides an independent basis for federal jurisdiction. The absence of even one of the required six elements precludes mandatory abstention.

Absence of factor (5) – "the action" must be commenced in state court – also defeats mandatory abstention. The Colorado Litigation cannot satisfy "the action" requirement because the insurers were not parties to that case and no coverage issues were ever raised in that case.

---

[1] The Colorado Homeowners concede in their Motion that LBRR's state of incorporation and principal place of business are not relevant in the diversity analysis.

The only insurance-related issues that ever arose in the Colorado Litigation were routine discovery issues concerning the production of documents, no different than the production of any other documents in that case.[2]

The garnishment action described in the Colorado Homeowners' Motion also does not satisfy the "action" requirements because it has not yet been filed (nor can it be filed until after a final judgment has been entered in the Colorado Litigation, which has not yet taken place). For this additional reason, the Colorado Homeowners cannot prove all six elements necessary for mandatory abstention principles to apply.

The Colorado Homeowners also cannot prove a third requirement of 28 U.S.C. § 1334(c)(2) – that the "action" would be "timely adjudicated" in state court. Because diversity jurisdiction exists, any garnishment action filed by the Colorado Homeowners in a Colorado state court (assuming no action would be pending before this Court) would likely be removed to a Colorado federal court. This renders irrelevant all the Colorado Homeowners' claims asserting that the Colorado state court is in a better position to resolve this coverage dispute than this Court.

Even if diversity jurisdiction did not exist, the Colorado Homeowners cannot reasonably maintain their position that the state court could resolve this coverage lawsuit more efficiently than this Court. In approximately the same amount of time that it took the Colorado state court to resolve claims involving just 20 homes, this Court managed the largest bankruptcy proceeding in the history of the United States and resolved more than 100,000 claims pertaining to the LBHI bankruptcy action. There is no legitimate basis to support the Colorado Homeowners' claim that

---

[2] The trial court in the Colorado Litigation also modified a protective order to expand the list of parties that had access to certain confidential documents to include insurers. In this instance, no matters pertaining to insurance coverage under the LBHI policies were before the trial court in the Colorado Litigation.

a Colorado state court could resolve this coverage lawsuit in a more efficient or timely manner than this Court.

The Colorado Homeowners' claim that a Colorado state court is better equipped to address coverage issues because they are based on state law claims is equally without merit. "District judges regularly 'address matters of state law.'" *Marah Wood Productions, LLC v. Jones, et al*., 534 B.R. 465 (D.Conn. 2015). The docket for the LBHI bankruptcy proceeding is replete with examples where this Court addressed matters relating to insurance coverage issues. Some are provided below:

| Docket Entry | Date | Order |
|---|---|---|
| 3220 | 3/25/2009 | Authorizing debtors to execute documents necessary to allow third party insurance companies to pay covered defense costs in underlying litigation. |
| 3304 | 3/18/2009 | Modifying automatic stay to allow Charise Carroll to Commence Action Limiting recovery to insurance proceeds. |
| 4984 | 8/27/2009 | Authorizing grant of first priority liens in cash collateral posted in connection with surety bond agreement with Travelers. |
| 5906 | 11/23/2009 | Modifying stay to allow insurer to make defense payments in underlying litigation. |
| 6297 | 12/17/2009 | Modifying stay to allow settlement payment under D&O policy. |
| 8001 | 4/1/2010 | Approving stipulation between Lehman Brothers Special Financing Inc. and AIG Markets, Inc. regarding assumption and assignment of derivative contracts. |
| 9643 | 6/17/2010 | Authorizing debtors to purchase "tail" extension to D&O policy. |
| 10945 | 8/20/2010 | Modifying the stay to allow insurers to pay defense costs in underlying litigation. |
| 12895 | 11/18/2010 | Modifying stay to allow settlement payment under D&O policy. |
| 12896 | 11/18/2010 | Modifying stay to allow insurers to pay defense costs in underlying litigation. |
| 13136 | 12/1/2010 | Modifying stay to allow advancement of insurance policies to settle underlying claims. |
| 13929 | 1/13/2011 | Modifying stay to allow insurer to make settlement payment to claimant. |
| 15277 | 3/23/2011 | Modifying stay to allow insurer to make settlement payment to claimant. |
| 16375 | 4/28/2011 | Granting objection to claims against insurance where debtors were deemed to have no liability. |
| 18691 | 7/21/2011 | Modifying stay to allow payment by insurers of arbitration award against insured persons. |
| 18807 | 7/27/2011 | With respect to surety bonds issued by Travelers, reclassifying claims as unsecured claim. |
| 20017 | 9/15/2011 | Modifying stay to allow settlement payment under D&O policy to settle underlying action. |
| 21029 | 10/19/2011 | Modifying stay to allow insurers to make settlement payments. |
| 21032 | 10/19/2011 | Authorizing limited releases to certain D&O insurers. |
| 21034 | 10/19/2011 | Authorizing debtors to enter into settlement with Arch Insurance Co. |
| 21037 | 10/19/2011 | Authorizing debtors to enter into settlement with Bond Safeguard Insurance Co. and Lexon Insurance Co. |
| 21039 | 10/19/2011 | Modifying stay to allow debtors to execute documentation necessary to allow excess insurer to pay defense expenses in underlying litigation. |
| 21044 | 10/20/2011 | Modifying stay to allow insured persons and debtors to execute all documents necessary for certain excess insurers to fund settlement on behalf of insured persons. |
| 22333 | 11/18/2011 | Modifying stay to allow insurer to make settlement payment on behalf of individual defendants. |
| 22335 | 11/18/2011 | Modifying stay to allow excess insurers to fund settlement of underlying claim. |
| 23054 | 12/7/2011 | Modifying stay to allow D&O insurers to make settlement payment on behalf of underlying defendants. |
| 41993 | 1/10/2014 | Approving settlement agreement of certain claims brought by insurer National Union. |

Based on the foregoing, the Colorado Homeowners can prove – at most – just three of the six requirements of 28 U.S.C. § 1334(c)(2) in order for mandatory abstention principles to apply. Accordingly, the Colorado Homeowners assertion that this Court must abstain from resolving this coverage lawsuit is wholly without merit and should be disregarded in its entirety.

## C.    THE COLORADO HOMEOWNERS PERMISSIVE ABSTENTION ARGUMENT ALSO LACKS MERIT

The Colorado Homeowners suggest, alternatively, that the Court should abstain from hearing a matter on a permissive basis "in the interest of justice, or in the interest of comity with State courts or respect for State law…." under 28 U.S.C. § 1334(c)(1).

It is the Colorado Homeowners' burden to prove that permissive abstention is warranted. *Marah Wood Productions, LLC v. Jones, et al*., 534 B.R. 465 (D.Conn. 2015). The Colorado Homeowners concede that courts are to invoke permissive abstention sparingly. *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) (internal citations and quotation marks omitted); *In re Residential Capital, LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014). In fact, courts have held that:

- permissive abstension is only appropriate under "narrow and extraordinary circumstances" *Marah Wood Productions, LLC v. Jones, et al*., 534 B.R. 465, 477 (D.Conn. 2015);

- the factors for evaluating a request for permissive abstention "do not favor remand" *Id.*; and

- when considering a motion to abstain, federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Id, citing In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308 332, (S.D.N.Y. 2003).

None of the reasons set forth in the Colorado Homeowners' Motion qualify as "extraordinary circumstances" that would justify a federal court refusing to exercise the jurisdiction given it.

In the Second Circuit, courts generally look to twelve factors when determining whether to abstain from adjudicating a proceeding on a permissive basis under 28 U.S.C. § 1334(c)(1):

14

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than *28 U.S.C. § 1334*, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*WorldCom*, 293 B.R. at 332 (internal citations omitted).

As stated above, the issues raised in this coverage lawsuit implicate the administration of not only LBRR's estate, but also the estates of LBHI and other LBHI-related entities that may qualify as insureds under the AIG Policies. If this coverage dispute were left to a Colorado state court to resolve, which is unlikely given federal diversity jurisdiction, the Colorado state court would have no authority to administer matters pertaining to the estates of any entities other than LBRR because none of the other entities were parties to the Colorado Litigation. By contrast, all matters pertaining to all of LBHI-related entities are already before this Court. This Court has the exclusive ability to effectively and efficiently administer the estates of all LBHI-related entities that may have an interest in the policy limits of the AIG Policies.

The Colorado Homeowners' contention that there would be less of a burden on the Colorado state court than this Court, is wholly erroneous as well. First, it is unlikely that a Colorado state court will ultimately preside over the garnishment action the Colorado Homeowners predict they will file. Second, in approximately the same amount of time that it took the Colorado state court to resolve claims involving just 20 homes, this Court has resolved countless claims pertaining to the largest bankruptcy action ever filed in the history of the United States.

The standing order of Judge Peck (to whom the case was originally assigned) described the Court as having a "rocket docket," and the progress made by the Court and the Trustee more than lives up to that characterization. Pursuant to the Trustee's Thirteenth Interim Report filed on October 30, 2015, customers have received more than one hundred and six billion dollars, fully satisfying over ninety-nine percent of the one hundred eleven thousand customer claims. Secured, priority, and administrative creditors have received one hundred percent distributions, exceeding two hundred fifty million dollars. General unsecured creditors have received approximately thirty-five percent of the allowed value of their claims, amounting to more than seven billion six hundred and seventy-eight million dollars, with the potential for further distribution in the future. Of the more than fifteen thousand general creditor claims into the estate, all but five hundred and thirty one have been finally resolved. The Colorado Homeowners cannot reasonably claim that this insurance coverage lawsuit would be resolved more efficiently or promptly in a Colorado state court given the than in this Court.

The Colorado Homeowners argue next that "While this Court has a breadth of experience, it can hardly be argued that this Court regularly deals with specific state law the issues raised via the Allied Claims." On this point, the Colorado Homeowners are wrong. As stated above, "District judges regularly 'address matters of state law.'" *Marah Wood Productions, LLC v. Jones, et al.*, 534 B.R. 465 (D.Conn. 2015), and the docket for the LBHI bankruptcy proceeding is replete with examples where this Court addressed matters relating to insurance coverage issues. See Chart, above, pp. 14-15. The Colorado Litigation did not involve any insurance coverage issues, and the Companies (and Allied) were not parties in the Colorado Litigation. The trial court in the Colorado Litigation has not addressed a single issue under the

16

AIG Policies where, by contrast, this Court has already dealt with issues pertaining to those policies by virtue of its entry of orders pertaining to the 2011 and 2014 Stipulations.

The Colorado Homeowners further argue abstention is warranted because the law governing this coverage dispute is unsettled, and abstention is favored where a bankruptcy court would have to predict how a state court would rule on unsettled issues of state law. This also fails because the law governing any coverage issues under the AIG Policies is settled.

The Colorado Homeowners' claims can generally be summarized as defective construction claims. Under New York law,[3] an occurrence does not include claims for faulty workmanship. *George A. Fuller Co. v. U.S. Fid. & Guar. Co*., 200 A.D.2d 255, 259, 613 N.Y.S.2d 152, 155 (1st Dep't 1994) (holding that a CGL policy did not cover damage to the building the insured was hired to build resulting from the insured's faulty workmanship). Under New York law, construction defects such as those asserted in the underlying action – faulty design, fabrication or installation – do not constitute "occurrences" under a commercial general liability insurance policy. The general rule under New York law is that a commercial general liability insurance policy does not afford coverage for breach of contract, breach of fiduciary duty, or breach of warranty, but rather for bodily injury and property damage. *See Grand Cove II Condominium Assn., Inc. v. Ginsberg,* 291 N.J.Super. 58, 72, 676 A.2d 1123, 1130 (N.J.App.Div.1996); *Fuller,* 200 A.D.2d at 259–260.

There is no "related" proceeding pending in state court because the Colorado Litigation did not involve any insurance coverage issues. The Companies (and Allied) were not parties in the Colorado Litigation. The trial court in the Colorado Litigation has not addressed a single issue under the AIG Policies.

---

[3] The AIG Policies were issued by an insurers in New York to LBHI, which was also located in New York. The policies were negotiated through and issued to insurance brokers located in New York. On these facts, it is likely that New York law will govern a determination of the parties' respective rights and duties, if any, under the Policies.

Another factor considered in discretionary abstention is whether there is independent federal jurisdiction other than 28 U.S.C. § 1334. As explained in detail above, 28 U.S.C. § 1332 provides an independent basis for federal jurisdiction.

The Colorado Homeowners argue next that "The Court has already told the Colorado Homeowners to resolve insurance issues in the Colorado Litigation with the LB Rose Ranch insurers." The 2014 Stipulation is not binding on the Companies, nor does it does not preclude the Companies from asserting their claims under the AIG Policies before any court having proper jurisdiction (nor from removing to federal court a future garnishment action filed by the Colorado Homeowners). Again, because diversity jurisdiction exists, the Colorado Homeowners' arguments in favor of having coverage issues resolved by a Colorado state court are irrelevant.

Based on the foregoing, the Colorado Homeowners have failed to prove that this coverage dispute presents "extraordinary circumstances" that justify this Court refusing to exercise the jurisdiction given it. Accordingly, the Colorado Homeowners' arguments in favor of permissive abstention should be flatly rejected.

## V.    LOCAL RULE 9013-1(a)

This Motion includes citations to the applicable rules and statutory authorities as support and a discussion of their application to this Motion. Accordingly, the Companies submit that this Motion satisfies Rule 9013-1(a) of the Local Rules for the Southern District of New York and respectfully requests the waiver of the need to file a supporting memorandum of law.

18

## VI.    CONCLUSION

For the reasons set forth above, the Colorado Homeowners' Motion to Dismiss, or in the

alternative, Motion to Stay, should be denied in its entirety.

Dated:    New York, New York
          January 20, 2016

HINKHOUSE WILLIAMS WALSH LLP


By: /s/ Joseph A. Hinkhouse
    Joseph A. Hinkhouse
    Richard A. Hodyl
    180 N. Stetson, Suite 3400
    Chicago, IL  60601
    (312) 784-5400
    jhinkhouse@hww-law.com
    rhodyl@hww-law.com

ZEICHNER ELLMAN & KRAUSE LLP


By: /s/ Michael S. Davis
    Michael S. Davis
    Peter Janovsky
    Robert Guttmann
    1211 Avenue of the Americas, 40th Floor
    New York, NY  10036
    (212) 223-0400
    mdavis@zeklaw.com
    pjanovsky@zeklaw.com
    rguttmann@zeklaw.com

    *Attorneys for Defendants American Home*
    *Assurance Company and National Union Fire*
    *Insurance Company of Pittsburgh, Pa.*

843607.01